Ed Wright, Plaintiff in Error,

*v.*

State of Tennessee, Defendant in Error.

405 S.W.2d 177.

(*Nashville,* December Term, 1965.)

Opinion filed July 15, 1966.

J. C. McMurtry, Gallatin, and Charles Haile, Celina, for plaintiff in error.

George F. McCanless, Attorney General, Edgar P. Calhoun, Assistant Attorney General, and Baxter Key, Jr., District Attorney General, Carthage, for the State in the trial court.

Mr. Justice Creson delivered the opinion of the Court.

This appeal comes from the Criminal Court of Clay County. The parties will be referred to as they appeared in the trial court; that is, plaintiff in error, Ed Wright, as defendant, and defendant in error as the State.

Defendant was indicted at the February 1963 Term of the Criminal Court of Clay County, for the crime of murder in the first degree, alleged to have occurred on or about November 17, 1962.

At the first setting of the cause the case was continued and, on application of the defendant, set for trial at the June, 1963 Term of Court. Defendant was on bond. Between the time of the indictment and the time set for trial, the defendant was extradited to Kentucky to be

tried there on two charges of forgery. The rendition warrant in connection with the extradition was signed by Governor Frank G. Clement on March 26, 1963. In April, 1963, the defendant was convicted in the Circuit Court of Monroe County, Kentucky, and sentenced to two years in each of two cases, the sentences to run concurrently. The defendant served time in the Kentucky State Reformatory, from April, 1963 to October 11, 1964. On his release from the Kentucky State Reformatory, he was held in Kentucky on a fugitive warrant issued by the State of Tennessee. At that time, he sought his release from jail in Kentucky by petition for the writ of habeas corpus. After hearing on this petition and appeal, defendant was extradited from the Commonwealth of Kentucky to Clay County, Tennessee; and he was returned to Tennessee in March, 1965.

Upon his return to Tennessee, defendant filed a second petition for writ of habeas corpus, which was heard in June, 1965, before The Honorable John A. Mitchell, and denied. He appealed to this Court and in an opinion written for the Court by Mr. Justice White, on January 14, 1966, the dismissal was affirmed on the basis that the case had become moot, since the defendant had been tried and convicted in the Criminal Court of Clay County in October, 1965.

By order of the Clay County Criminal Court of June 5, 1965, the defendant was ordered to stand trial on June 29, 1965. However, the State moved for a continuance at that time. By appropriate plea in the Clay County Criminal Court, the defendant challenged the right of the State to proceed on the ground (1) that the State of Tennessee, by the extradition of defendant to the State of Kentucky, had waived its right to try the defendant, and

(2) that defendant had been denied a speedy trial in violation of Amendment 6 to the Constitution of the United States, and Article 1, Section 9 of the Constitution of Tennessee. The defendant was tried on October 27-28, 1965, for the crime charged. The jury found the defendant guilty of voluntary manslaughter and fixed his punishment at five years in the State Penitentiary. Judgment was entered in accord with the verdict of the jury. Defendant seasonably made a motion for new trial, which was overruled. Appeal has been timely perfected to this Court.

The major point of controversy on this appeal is whether or not the defendant's right to a speedy trial, under Article 1, Section 9 of the Constitution of the State of Tennessee, has been denied him. A second point urged by the defendant is that, by issuance of the extradition warrant, surrendering defendant to the State of Kentucky, the State of Tennessee had waived its right to try the defendant, or its jurisdiction.

From the foregoing, it is clear and undisputed that in this case the defendant, while under indictment for murder in the first degree in the State of Tennessee, was extradited to the State of Kentucky to be tried for forgery. It is conceded by the State that, having jurisdiction over the defendant at the time of extradition, it gave up that jurisdiction in turning the defendant over to the State of Kentucky. The question is to what degree such jurisdiction was surrendered. This will be commented upon later.

The questions to be discussed are raised by proper assignments of error before this Court. In its brief and argument the State relies heavily upon the opinion of this Court in the case of *Raine v. State* (1920) 143 Tenn.

168, 226 S.W. 189; and the State's brief says, with some emphasis, that "the similarities in the case at hand to the *Raine* case are quite noticeable." We agree that there are many similarities between *Raine v. State* and the case at bar. However, we believe that it is the dissimilarity between the case at bar and *Raine v. State* that is determinative. In *Raine v. State,* the Federal authorities took jurisdiction over the defendant, tried him in a Federal Court and sentenced him to a Federal Penitentiary, without any cooperative action on the part of the State of Tennessee. No Tennessee State action was there involved. In the present case, it is Tennessee State action that placed the defendant in the jurisdiction of the Kentucky Court and sentenced him to a Federal Penitentiary, within this State. While we are in agreement with the State's position that the State of Tennessee, by its extradition proceeding, did not forever waive jurisdiction over the defendant; in our opinion, this point is entirely separate from the question of whether or not the State's action in extraditing defendant denied him a speedy trial within the meaning of the Tennessee Constitution.

The decision of this Court in the case of *Arrowsmith v. State* (1914) 131 Tenn. 480, 175 S.W. 545, L.R.A.1915E, 363, is, in principle, very much in point. In that case, the defendant's trial was delayed after he had been indicted, until he served a sentence of three years in the State Penitentiary in Tennessee. It appears that the only difference between the cited case and the case at bar appears to be that the defendant in the case cited was imprisoned in the State of Tennessee; while in the case now before this Court, the State of Tennessee officially delivered defendant to the State of Kentucky for trial and subsequent imprisonment in that State. In reversing

the conviction of Arrowsmith and ordering his release from custody, Mr. Justice Williams, speaking for the Court, had this to say:

"The purpose of the provision against an unreasonable delay in trial is not solely a release from imprisonment in the event of acquittal, but also a release from the harassment of a criminal prosecution and the anxiety attending the same; and hence an accused admitted to bail is protected as well as one in prison. Moreover, a long delay may result in the loss of witnesses for the accused as well as the state, and the importance of this consideration is not lessened by the fact that the defendant is serving a sentence in the penitentiary for another crime.'

Indeed, the importance of that consideration is accentuated by the fact of the accused's imprisonment. He is less able on that account to keep posted as to the movements of his witnesses, and their testimony may be lost during his continued confinement. It would be a harsh construction of the clause, containing this guaranty, imbedded in our Bill of Rights, that would deny it application to those who stand most in need of it."

And, further, the Court said:

"A 'speedy trial,' so guaranteed, means a trial as soon after indictment as the prosecution can, with reasonable diligence, prepare for it, without needless, vexatious, or oppressive delay, having in view, however, its regulation and conduct by fixed rules of law, any delay created by the operation of which rules does not in legal contemplation work prejudice to the constitutional right of the accused."

A lengthy research has not disclosed to us a case precisely and factually in point, though we are of opinion that the apposite principles are settled.

It is pertinent to note, in this connection, the decision of this Court in the case of *State ex rel. Woods v. Bomar* (1963) 211 Tenn. 552, 366 S.W.2d 750. In that case, the defendant sought, in a habeas corpus proceeding, to establish that the conviction under which he was serving time was void because his constitutional right to a speedy trial had been denied him. In that case the defendant was under charge of a parole violation; and, while under this charge, he was extradited to a sister state for trial in a criminal proceeding there. Since, in that case, the defendant had already been tried and convicted, there was no critical basis for sustaining the position that a speedy trial had been denied. In reaching its decision in that case, this Court, speaking through Justice Dyer, said:

"We are impressed with the logic of this argument and admit as dictum in this opinion where the Governor honoring a requisition from a demanding state against one who at the time also has criminal charges pending against him in this state, such action could violate his constitutional rights; but this issue is not before this Court in the instant case since it is admitted and rightfully so, Petitioner was not so prejudiced."

■■ We now come to the argument of the State that the defendant here waived his right to a speedy trial by virtue of the fact that he did not make timely objection to delay, or insist upon such speedy trial. In light of the opinion of this Court in *Raine v. State,* supra, it is now beyond serious question that the defendant's right to a speedy trial is a personal one, and may be waived. We

do not agree with the State that such has occurred in the instant case. It seems sufficient to point out that in *Arrowsmith v. State,* this Court said:

"Arrowsmith was conditioned so that he could not personally demand that his own trial be proceeded with; and without the knowledge of either himself or his counsel the court in legal effect, through the order, continued the cases for approximately two years— needlessly and vexatiously. *Benton v. Com.,* 90 Va. 328, 18 S.E. 282; *Jones v. Com.,* 114 Ky. 599, 71 S.W. 643."

From our investigation, the weight of authority seems to be to the same effect. In 21 Am.Jur.2d 292 (Criminal Law—Section 254) appears the following:

"In many jurisdictions, the right to speedy trial is waived unless defendant demands trial, resists a postponement or makes some effort to secure a speedier trial than the State accorded him. However, there is no waiver in failure to demand trial unless defendant was aware that the indictment was pending *and it has been held that waiver of right to speedy trial will not be presumed from mere failure to demand trial where defendant is in no practicable position to demand it. Some cases state merely that failure to demand prompt trial implies a waiver of the right thereto in the absence of a showing of circumstances which negative the implication."*

There is no insistence in this case that defendant ever expressly waived speedy trial. The implications from this record are to the contrary.

It is our view, and we so hold, that the circumstances of this case constitute denial of speedy trial, as provided by Article 1, Section 9 of the Constitution of the State of

Tennessee. Holding this view, as was done in *Arrowsmith v. State,* supra, we reverse the judgment of the court below and an order shall be entered releasing defendant from custody.

BURNETT, CHIEF JUSTICE, and WHITE, DYER and CHATTIN, JUSTICES, concur.