**STATE of Tennessee, Appellee,**

v.

**Terry E. WOOD, Appellant.**

Supreme Court of Tennessee,
at Nashville.

May 6, 1996.

 

*OPINION*

BIRCH, Justice.

We granted the application of Terry E. Wood, the defendant, for permission to appeal in order to resolve an issue of first impression in Tennessee: whether the return of a sealed presentment [1] engages an accused person's speedy trial rights under the Sixth Amendment to the United States Constitution and Article I, § 9, of the Tennessee Constitution. After a thorough examination of the record and careful consideration of the issue, we conclude, for reasons appearing below, that the return of a presentment, whether sealed or unsealed, whether the accompanying *capias* is executed or unexecuted, is a formal accusation that engages constitutional speedy trial provisions. Thus, we must apply the criteria of *Barker v. Wingo* [2] and *State v. Bishop* [3] to determine whether the thirteen-year delay in this case deprived the appellant of his constitutional speedy trial rights. We find that there was no such deprivation and affirm the judgment of the Court of Criminal Appeals.

A Williamson County grand jury in September 1979 returned a presentment charging the defendant with the murder of Joseph R. Henderson. The presentment as returned was sealed, and a *capias* was issued for the defendant, who was then in the custody of Alabama authorities awaiting trial on a different murder charge. The State knew the circumstances of the defendant's detention in Alabama; however, the *capias* was not executed because the Williamson County authorities believed that Alabama would sentence the defendant to death by electrocution.

The defendant was convicted on the Alabama charge and sentenced to a prison term. Thus, in 1983, the defendant was alive and still in the custody of the Alabama authorities. In November 1983, the Circuit Court of Williamson County placed the cause on the

John H. Henderson, Jr., Public Defender, Maurine C. Hatchett, Assistant Public Defender, Franklin, for Appellant.

Charles W. Burson, Attorney General & Reporter, Christina S. Shevalier, Assistant Attorney General, Nashville, Joseph D. Baugh, District Attorney General, Mark Puryear, Assistant District Attorney General, Franklin, for Appellee.

1. For our purposes, "presentment" is synonymous with "indictment."

2. 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

3. 493 S.W.2d 81 (Tenn.1973).

"retired docket." For reasons not clearly shown in the record, the Williamson County sheriff's department lodged a detainer against the defendant in March 1984. Although aware of the detainer,[4] the defendant did not pursue a speedy trial under the Interstate Compact on Detainers[5] at that time.

In June 1989, Alabama offered the defendant parole. This parole was, however, conditioned on the defendant's agreement to submit to the Tennessee detainer. The defendant refused and continued serving the Alabama sentence.

In March 1990, the defendant wrote the Williamson County court clerk inquiring about the detainer; the clerk did not respond. On September 4, 1990, the defendant filed a *pro se* motion for a speedy trial. The trial court docketed this motion for hearing despite the fact that the defendant failed to follow the required procedure.[6]

The trial court conducted a hearing on the motion on September 10, 1990. The defendant was not present, and no one has offered a clear recollection of those proceedings. In any event, the docket contains an entry: "detainer lifted."

Subsequently, the District Attorney General investigated further and determined that the case should be prosecuted. He then initiated procedures under the Interstate Compact Act to return the defendant to Williamson County for trial. Trial commenced February 9, 1993, almost fourteen years after the return of the presentment.

At trial, the victim's girlfriend testified that she and the victim had planned to meet the night the victim disappeared. When he did not appear, she began searching for him. She drove first to a bar where he had been

when he last spoke with her by telephone that afternoon. When she did not see his van there, she pulled into a trailer park across the street. As she was pulling into the trailer park, the victim's van was pulling out. The victim was driving, and a man she later identified as the defendant was in the passenger seat. She made eye contact with the victim; he made a hand motion as though to wave her away. She tried to follow the van, but lost it. She never saw the victim alive again.

Later that evening, the defendant was observed in possession of the victim's van and was wearing certain items of clothing known to belong to the victim. The defendant told his girlfriend that he had to "bust" someone. Within a day or so of the victim's disappearance, the defendant accosted and detained two females in Barren County, Kentucky.[7] During the encounter, the defendant bragged to them that he had killed the victim. The females assisted him in disposing of some of the victim's personal possessions. These items were recovered when they escaped from the defendant and took investigators to the site where the items had been thrown. Several days later, the victim's girlfriend saw a newspaper article that included a photograph of the defendant. She immediately contacted the authorities and told them the photograph depicted the man she had seen with the victim the night he disappeared. When the defendant was arrested on charges of rape and kidnapping of the two females, the authorities confiscated a *Colt* .38 revolver. During questioning, the defendant gave Kentucky police two versions of how he had acquired the victim's van. First, he said he found the van on the side of the road near I–65 with the keys inside. He said later that the victim had gone on a trip and had left the

---

**4.** The defendant testified that in 1984 he learned of the Williamson County charges when someone mailed copies of the "warrants" to him in Alabama.

**5.** Tennessee adopted the Compact in 1970. Tenn.Code Ann. § 40–31–101 (1990). Alabama adopted the Compact in 1978. Ala.Code § 15–9–80 (1995).

**6.** This Court has held that under the Compact, the defendant has the burden of giving notice to the receiving state of his or her request under

Article III of the Compact for prompt disposition of the charges. *State v. Moore,* 774 S.W.2d 590 (Tenn.1989). Strict compliance with the notice and certification procedures outlined in the Compact is required. *State v. Grizzell,* 584 S.W.2d 678 (Tenn.Crim.App.1979). Since the defendant did not comply with the procedures outlined in the Compact, the provisions of that statutory remedy did not apply.

**7.** The fact that the females were raped was not admitted as evidence in the trial of this cause.

van with him. The victim's body was discovered in Williamson County ten days after his disappearance. He had been shot three times—twice in the head and once in the abdomen.

Significantly, none of the State's witnesses had difficulty recalling the facts surrounding the victim's disappearance; however, in the period between presentment and trial, one non-critical witness (a criminal investigator) died. Neither the *Colt* .38 revolver seized from the defendant at the time of his arrest in Kentucky nor the bullet fragments recovered from the victim's body could be located; nevertheless, the ballistic report from the Tennessee Bureau of Investigation was available.

The jury convicted the defendant of first-degree murder and possession of a firearm in the commission of murder. In addition to life imprisonment for the murder conviction, the trial court imposed a five-year sentence for the firearm violation—to be served consecutively to the other Alabama and Tennessee convictions.

The defendant makes no challenge to the convicting evidence; rather, he insists that the State, by permitting approximately thirteen years to pass between presentment and trial, violated his Sixth Amendment right to a speedy trial. He urges further that the lengthy delay violated his due process rights and requires dismissal of the charges.

The State contends that because the presentment was sealed, the period within which the defendant should have filed for a speedy trial did not begin to run until the execution of the *capias* on October 9, 1992, thereby making the *Barker* balancing test inapplicable. The State reasons that because the speedy trial clause does not apply, the issues must be analyzed under due process criteria. To prevail under such criteria, the State asserts, the defendant must prove that actual prejudice resulted from the delay. The rationale underlying this requirement, the State says, is that the purpose for the speedy trial provisions of our state and federal constitutions is to prevent oppressive pretrial incarceration, protect a defendant from the humiliation and anxiety associated with a public accusation, and avoid impairment of a defendant's defense caused by a lengthy delay. Hence, a defendant in a sealed presentment case is not exposed to oppressive pretrial incarceration and, because he is unaware of the pending charges, is not subject to such anxiety and humiliation. Moreover, the State argues that the statutes of limitation protect an accused from having to defend against stale charges.[8] The conclusion should be, the State asserts, that the conviction must be affirmed since actual prejudice was not proven.

■ We first address the issue of whether a sealed presentment is sufficient to require a speedy trial analysis. In our view, the State's position conflicts with the Sixth Amendment to the U.S. Constitution and with Article I, § 9, of the Tennessee Constitution. Both constitutional provisions apply, by their own terms, to persons "accused" in a "criminal prosecution." Clearly, to be an "accused" one must be faced with a "formal accusation." The United States Supreme Court has held that the Sixth Amendment guarantee to a speedy trial does not apply until the defendant becomes an "accused." *United States v. Marion,* 404 U.S. 307, 313, 92 S.Ct. 455, 459–60, 30 L.Ed.2d 468 (1971). Specifically, "it is *either* a formal indictment *or* information *or* else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." 404 U.S. at 320, 92 S.Ct. at 463 (emphasis added). This Court has also noted that no speedy trial rights arise until after formal accusation, *either* by *arrest* or by *grand jury action. State v. Baker,* 614 S.W.2d 352, 353 (1981). Moreover, Tenn. Code Ann. § 40–2–104 (1990) expressly provides that a prosecution is commenced by finding an indictment or presentment. We

---

8. In first-degree murder cases the protection offered by a statute of limitation does not exist since there is no statute of limitation for that crime. *See* Tenn.Code Ann. § 40–2–101(a) (1990): "A person may be prosecuted, tried and punished for an offense punishable with death or by imprisonment in the penitentiary during life, at any time after the offense is committed."

have never distinguished between sealed and unsealed indictments.

A sealed indictment is no different from an unsealed indictment except that it is not subject to inspection by, or disclosure to, the public until the defendant is arrested or makes bail. Tenn.Code Ann. §§ 40–13–111, –112. It still has the effect of formally charging the defendant with a crime.

Additionally, the majority of federal courts that have considered the issue have applied the speedy trial analysis to sealed indictment cases. *See, e.g., United States v. Shell*, 961 F.2d 138, 143–45 (9th Cir.1992); *United States v. Lewis*, 907 F.2d 773, 774 (8th Cir.), *cert. denied*, 498 U.S. 906, 111 S.Ct. 274, 112 L.Ed.2d 230 (1990); *United States v. Mitchell*, 769 F.2d 1544, 1547–48 (11th Cir.1985), *cert. denied*, 474 U.S. 1066, 106 S.Ct. 819, 88 L.Ed.2d 792 (1986); *United States v. Alo*, 439 F.2d 751 (2nd Cir.), *cert. denied*, 404 U.S. 850, 92 S.Ct. 86, 30 L.Ed.2d 89 (1971); *United States v. Shelton*, 820 F.Supp. 461 (W.D.Mo.1992); *United States v. Rogers*, 781 F.Supp. 1181 (S.D.Miss.1991). *But see United States v. Watson*, 599 F.2d 1149, 1156, *modified by United States v. Muse*, 690 F.2d 15 (2nd Cir.1979), *cert. denied*, 450 U.S. 984, 101 S.Ct. 1522, 67 L.Ed.2d 820 (1981) (right to speedy trial attaches not when sealed indictment filed, but when unsealed); *United States v. Hay*, 527 F.2d 990, 994 n. 4 (10th Cir.1975), *cert. denied*, 425 U.S. 935, 96 S.Ct. 1666, 48 L.Ed.2d 176 (1976) (since indictment sealed defendant suffered neither restraint on his liberty nor public accusation before his arrest).

In our opinion, the better reasoned cases recognize that even though a defendant under a sealed indictment does not suffer restraint on his or her liberty or the anxiety and humiliation that accompany a public accusation, such a defendant still has a strong interest in preserving his or her ability to prepare for trial. Lengthy delays following the issuance of an indictment, whether sealed or not, may directly affect this ability to prepare for trial. Faded memories, erosion or loss of potentially exculpatory evidence, and loss of potentially favorable witnesses are all possible results of a lengthy delay.

We conclude, accordingly, that the return of a presentment, whether sealed or not, is a "formal accusation" such as would engage an accused person's speedy trial rights.

It remains for us to determine whether the defendant's speedy trial rights were violated. In *Barker v. Wingo*,[9] the United States Supreme Court adopted a balancing test to determine whether a defendant's right to a speedy trial had been denied under the Sixth Amendment. This test involves the balancing of four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice resulting to the defendant from the delay. We adopted the *Barker* analysis in *State v. Bishop*, 493 S.W.2d 81, 83–85 (Tenn.1973).

Regarding the first factor, length of the delay, the *Barker* Court noted that the length of the delay is the triggering mechanism that will necessitate the consideration of the other three factors. " 'Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.' " *State v. Baker*, 614 S.W.2d 352, 355 (Tenn. 1981) (quoting *Barker*, 407 U.S. at 530, 92 S.Ct. at 2191–92). The reasonableness of the length of the delay depends on the complexity of the case. 407 U.S. at 530–31, 92 S.Ct. at 2191–92. More recently, the Court noted in *Doggett v. United States* that "the presumption that pretrial delay has prejudiced the accused intensifies over time." 505 U.S. 647, 652, 112 S.Ct. 2686, 2691, 120 L.Ed.2d 520 (1992). In this case, the delay of thirteen years is, as the State concedes, clearly sufficient to require an analysis of the remaining three factors. This factor weighs favorably for the defendant.

The second *Barker* factor, reason for the delay, generally falls into one of four categories: (1) intentional delay to gain a tactical advantage over the defense or delay designed to harass the defendant; (2) bu-

---

9. 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

reaucratic indifference or negligence;[10] (3) delay necessary to the fair and effective prosecution of the case;[11] and (4) delay caused, or acquiesced in, by the defense.[12] The first type, intentional delay, is weighed heavily against the State. The second type, negligent delay, is also weighed against the State although not as heavily as deliberate delay. The third type of delay is, by definition, justifiable and is not weighed against either party. The fourth type of delay, which is caused or acquiesced in by the defendant, is weighed against the defendant.

The delay in this case resulted from gross negligence by the State. The District Attorney General testified that he knew the defendant was in custody in Alabama on another charge when the presentment was issued in September 1979. The case came up for docket call several times over the course of the years until it was retired in November 1983. During this entire period, the State knew that the defendant was in the custody of Alabama authorities. No explanation appears of record why the State failed to respond to the defendant's 1990 written request for a speedy trial. Not until the District Attorney General learned that the defendant might be granted parole in Alabama did the State begin to prepare for trial.

█ Although there is no clear evidence of bad faith by the State, a delay based on the prediction that disposition of another case in a foreign jurisdiction will serve to keep the defendant incarcerated will always risk dismissal if, in fact, the State ultimately chooses to prosecute. *See Arrowsmith v. State*, 131 Tenn. 480, 175 S.W. 545, 546–47 (1915); *State v. Kolb*, 755 S.W.2d 472 (Tenn.Crim.App. 1988); *State v. Wallace*, 648 S.W.2d 264

(Tenn.Crim.App.1980). Not only does such a delay impinge upon an accused's ability to defend himself, but it also affects his eligibility for concurrent sentencing, parole, and other rehabilitative programs. Here, there was no valid reason for the delay; this factor must weigh in favor of the defendant.

█ The third factor, an accused person's assertion of his right to a speedy trial, may or may not play an important role in the ultimate determination of whether that person has been deprived of his right to a speedy trial. The *Barker* Court rejected an outright "demand" rule, whereby failure to seek a speedy trial would result in a waiver of that right. 407 U.S. at 529–30, 92 S.Ct. at 2191–92. This Court has likewise rejected such a rigid rule. *Bishop*, 493 S.W.2d at 84. The primary burden, after all, is on the courts and prosecutors to assure that cases are brought to trial. *Barker*, 407 U.S. at 529, 92 S.Ct. at 2191. Nevertheless, a defendant's assertion or failure to assert the right to a speedy trial is one factor to consider in the overall balance in determining whether the right has been unconstitutionally deprived. *Id.* at 528, 92 S.Ct. at 2191. A defendant's assertion of the speedy trial right is entitled to strong evidentiary weight in determining whether the right has been denied, and failure to assert the right will make it difficult to prove it was denied. *Id.* at 531–32, 92 S.Ct. at 2192–93; *Bishop*, 493 S.W.2d at 85.

█ Failure to assert the right implies a defendant does not actively seek a swift trial. "[E]vidence that the defendant did not want a speedy trial would never warrant the finding of a constitutional violation except in 'extraordinary circumstances.' " *Baker*, 614 S.W.2d at 355.[13] In

---

10. Overcrowded court dockets or simple lack of diligence fall into this category.

11. Delays which fall into this category include those cases where the complexity of the case reasonably requires more time to prepare for trial, or where the delay is necessary to perform further investigation or to locate a missing witness, for example.

12. Good faith attempts to plea-bargain or repeated defense requests for continuances are examples of this category. *See, e.g., State v. Taylor,*

771 S.W.2d 387 (Tenn.1989), *cert. denied* 497 U.S. 1031, 110 S.Ct. 3291, 111 L.Ed.2d 799 (1990); *State v. Johnson*, 781 S.W.2d 873 (Tenn. Crim.App.1989), *overruled on other grounds by, State v. Howington*, 907 S.W.2d 403 (Tenn.1995).

13. However, an accused who is unaware that charges are pending against him or her, as is often the case where an indictment has been sealed and not served, cannot be penalized for his or her failure to assert the speedy trial right. *Doggett*, 505 U.S. at 652–54, 112 S.Ct. at 2691; *see also Wright v. State*, 218 Tenn. 610, 405

this case, the defendant learned in 1984 that there was a detainer against him. Thereafter, he did nothing until 1990. Even after he learned that his Alabama parole would be conditioned on his return to Tennessee for trial on the murder presentment, he waited several months before seeking legal assistance and demanding a speedy trial. Hence, we infer that the defendant did not necessarily want a speedy trial in Tennessee. After all, had the Tennessee charge ultimately died of neglect, there would have been no impediment to an unconditional parole in Alabama. Asserting his right to trial would have prevented that, and it would have exposed the defendant to the risk of a Tennessee conviction. We find that the defendant acquiesced in the delay by failing to assert his right to a speedy trial. This factor must weigh in favor of the State.

We view the fourth factor as the most important: whether the accused suffered prejudice by the delay. *Baker*, 614 S.W.2d at 355–56 (*citing Barker*, 407 U.S. at 532, 92 S.Ct. at 2193; *Bishop*, 493 S.W.2d at 85); *State v. Thomas*, 818 S.W.2d 350, 363 (Tenn. Crim.App.1991). Usually, it is relatively easy to determine whether a defendant has been prejudiced by inordinately long pretrial incarceration, or whether he or she has been subjected to the stress and anxiety that accompany a public accusation over an extremely long period of time. It is often extremely difficult, however, for a defendant to demonstrate specifically how the delay has impaired his ability to defend himself. Courts have recognized this difficulty and consequently do not necessarily require a defendant to affirmatively prove particularized prejudice. *Doggett*, 505 U.S. at 654–55, 112 S.Ct. at 2692; *Moore v. Arizona*, 419 U.S. 871, 95 S.Ct. 131, 42 L.Ed.2d 110 (1974). Furthermore,

> [I]mpairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony "can rarely be shown." ... [E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such pre-

S.W.2d 177, 180 (1966); *State v. Wallace,* 648

sumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, it is part of the mix of relevant facts, and its importance increases with the length of the delay.

*Doggett*, 505 U.S. at 655, 112 S.Ct. at 2692–93 (citations omitted).

Although we can assume that he experienced some anxiety and uncertainty about the ultimate disposition of these charges, nothing in the record suggests that the defendant's ability to present his defense was impaired. In fact, the defendant does not claim specific prejudice resulting from the delay.

While "affirmative proof of particularized prejudice is not essential to every speedy trial claim," 505 U.S. at 655, 112 S.Ct. at 2692, and "the presumption that pretrial delay has prejudiced the accused intensifies over time," *id.* at 652, 112 S.Ct. at 2691, we believe the facts in this case are distinguishable from those in *Doggett*.

The defendant in *Doggett* was charged with conspiracy to import and distribute cocaine. After his indictment in 1980, Doggett, unaware of the charges pending against him, left the country. He was later arrested and imprisoned in Panama on another matter. The Drug Enforcement Agency (DEA) learned of Doggett's whereabouts and requested expulsion to the United States: The DEA did not pursue its request further until after Doggett had been released and apparently abandoned its search soon thereafter. In 1982, Doggett legally entered the United States and lived openly. In 1988, the government conducted a routine credit check on fugitives. Consequently, Doggett was arrested. The Supreme Court held that Doggett had been deprived of his right to a speedy trial.

Significantly, while Doggett was in no way responsible for the delay in his case, Wood deliberately chose to forgo a speedy trial request, hoping instead that the Tennessee charges would die of neglect. He acquiesced in the delay from the time he learned of the detainer in 1984 until 1990, after Alabama had offered conditional parole. Any pre-

S.W.2d 264, 267 (Tenn.Crim.App.1980).

sumption of prejudice is weakened to some degree by the defendant's acquiescence in the delay. Therefore, the prejudice factor weighs in favor of the State.

 We find that the length of the delay, on the one hand, and the lack of any justifiable reason for such delay, on the other hand, make this a close case. Nevertheless, balancing all of the *Barker* factors, we conclude that

1. The length of the delay of thirteen years was presumptively prejudicial and weighs in favor of the defendant.

2. The delay was caused by the State's negligence and weighs in favor of the defendant.

3. The defendant failed to assert his right to a speedy trial until eleven years had passed—only after he discovered the pending Tennessee charge was jeopardizing his parole in Alabama. This factor weighs in favor of the State.

4. The presumption of prejudice was weakened by the defendant's acquiescence in the delay. This factor weighs in favor of the State.

In the balancing analysis, the fourth factor is entitled to the greatest weight. Accordingly, we conclude that the defendant was not deprived of his right to a speedy trial under federal or state constitutional principles.

We hold that the return of a sealed presentment engages an accused's right to a speedy trial. The fact that a defendant is incarcerated in another jurisdiction will not justify delay if the State knows his whereabouts. The State is primarily responsible for prosecuting an accused in a timely manner. For defendants who choose to risk that the State will ultimately decline to prosecute them, their acquiescence in the delay by failing to assert their right to a speedy trial may serve to weaken any presumption of prejudice, depending, of course, on the nature of the case and the evidence presented. The judgment of the Court of Criminal Appeals is affirmed.

ANDERSON, C.J., and DROWOTA, J., concur.

REID and WHITE, JJ., dissent.

REID, Justice, dissenting.

I concur in the dissent of Justice White.

In addition, I would find that the circumstances next preceding the trial would be determinative. The majority finds that the defendant's acquiescence in the delay tipped the scales in favor of the State. However, in March 1990, 35 months before the trial was commenced, the defendant made inquiry to the court regarding any charges pending against him. Despite the failure of the clerk to respond to the inquiry, the defendant filed a motion for speedy trial in September 1990. Consequently, the delay from 1990 until 1993 was caused solely by the State. I would hold this delay of almost three years to be a violation of the right to a speedy trial, notwithstanding all other circumstances.

WHITE, Justice, dissenting.

I write separately in this case to dissent from the majority's conclusion that defendant was not deprived of his right to a speedy trial under federal and state constitutional provisions. I agree wholeheartedly with the majority's recitation of the controlling precedent, but, in my opinion, the conclusion runs afoul of that authority and overrules countless others.

Wood was indicted in September, 1979, and charged with a murder that allegedly occurred in July, 1979. The indictment remained sealed while numerous alias capiases were issued. In November, 1983, the indictment against Wood was "retired" having never been served.

While somewhat ambiguous, the records indicate that, as early as March, 1984, the authorities in Tennessee knew that Wood was incarcerated in Alabama. On March 14, 1984, for example, Alabama corrections officials acknowledge receipt of a Tennessee detainer. Nonetheless, nothing indicates compliance with the interstate compact on detainers. In effect, neither Tennessee nor Alabama took any action, at least so far as

the record demonstrates, following the March 1984 acknowledgment.

Sometime that year Wood learned of the Tennessee detainer. He wrote for information to the Sheriff's Department in Williamson County but received none.

In 1989, Wood was offered parole by Alabama officials contingent on his waiving extradition to Tennessee. Nothing in the record disputes his testimony that he asked for counsel to assist in making the decision. In fact, his later tenacity seems to support that testimony. In any event, the Alabama authorities noted his refusal, and he was not paroled. It is this event on which the majority bases its conclusions that Wood acquiesced in the delay that ultimately resulted in his trial some four years later. In my opinion, this conclusion represents a departure from well-established precedent.

After Alabama denied Wood parole in 1989, he again wrote Williamson County seeking information about the charges and legal assistance. His March 22, 1990, letter to the clerk of the court was answered by the clerk on August 13, 1990. In the response, the clerk referred Wood to the district attorney.

Wood filed a pro se motion for speedy trial in September, 1990, which was heard in Wood's absence on September 10th. The docket entry for that hearing indicates "detainer lifted."

Two years later, the district attorney issued an alias capias for Wood. He was served in the Alabama prison on October 29, 1992, and tried on February 9, 1993, some twenty-nine months after his demand for a speedy trial.

The majority acknowledges that evaluation of a speedy trial issue requires consideration of four factors which must be balanced. *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In analyzing these factors, the majority correctly finds that (1) the length of the delay was presumptively prejudicial and weighs in favor of defendant [1] and that (2) the delay was caused by the

state's negligence and weighs in favor of defendant.

In my opinion the majority opinion errs, however, when, on the third factor, the majority concludes that defendant failed to assert his right to a speedy trial. This conclusion, based on Wood's reaction to the conditional parole opportunity, is faulty in three regards. First, it finds a waiver of a speedy trial right based on the exercise of an equally cognizable constitutional right, the right to counsel before making a decision regarding extradition. Second, it elevates the demand factor above all else equating a lack of demand with a waiver of the right. Third, it misconstrues the facts in the record before us.

Tennessee authorities knew in 1984 defendant's whereabouts. Although given legal authority to proceed against him, Tenn.Code Ann. §§ 40–31–101 et seq. (1990 Repl.), they did nothing until he demanded a speedy trial. The majority's assertion that defendant "did nothing" from 1984 until 1990 is perplexing. What was defendant to do? He had not been served with an indictment, capias, warrant, or ICD form requesting final disposition. In effect, there was no proceeding against Wood during that period. The majority's attempt to cast the burden to "do something" on Wood, with all due respect, inverts the order of things.

More importantly, however, even if Wood's failure to take affirmative steps in 1984 was relevant, it does not justify the majority's conclusion. Immediately following notification that Alabama at least thought Tennessee still had an interest in Wood, Wood sought information. He requested counsel. He demanded a speedy trial. Yet the state delayed another twenty-nine months before trying him. At a minimum, I would balance the *Barker* factors as follows:

1. The length of delay was prejudicial and weighs in defendant's favor.

2. The delay was unjustified, was caused by the state's negligence, and weighs in defendant's favor.

---

1. The majority finds a thirteen-year delay. In my opinion the analysis could just as easily and

correctly focus on the twenty-nine month post-demand delay.

3. The defendant's demand for a speedy trial after unsuccessful requests for counsel and information, weighs in defendant's favor.

The fourth factor—prejudice by the delay—is most difficult. Courts have recognized how difficult this factor is to establish and have, accordingly, allowed a presumption of prejudice to attach to excessive delays. There is in this case, however, no proof of particularized prejudice. Nonetheless, at a minimum, the factor should be treated neutrally weighing in neither party's favor.

Balancing the four factors, then, it is abundantly clear that defendant's constitutional speedy trial rights have been violated, and I would so hold preferring that unfortunate result to the one I believe the majority's opinion allows: a prosecution far beyond the time period we have deemed reasonable before in the face of a speedy trial demand.