IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 10, 2009 Session

## STATE OF TENNESSEE v. RICKEY E. HUTCHINGS

**Appeal from the Circuit Court for Williamson County**
**No. I-594-137     Robbie T. Beal, Judge**

**No. M2008-00814-CCA-R3-CD - Filed June 16, 2009**

The Defendant, Rickey E. Hutchings, appeals as of right from the Williamson County Circuit Court's revocation of his 1994 probationary sentence for possession of contraband in a penal institution. On June 22, 1998, a warrant was issued against the Defendant, alleging a violation of probation based upon the Defendant's arrest in Gulfport, Mississippi for possession of approximately one hundred pounds of marijuana with the intent to sell. The warrant was not served on the Defendant until November 27, 2007, and was thereafter amended to include additional criminal behavior. On appeal, the Defendant argues that the delay between the issuance of the probation violation warrant and his revocation hearing violated his right to a speedy revocation hearing and, therefore, that the trial court erred by denying his motion to dismiss the warrants. Because the Defendant was denied the right to a speedy probation revocation hearing, the judgment of the trial court is reversed, and the warrants against the Defendant are dismissed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Probation Violation Warrants Dismissed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

F. Shayne Brasfield, Franklin, Tennessee, for the appellant, Rickey E. Hutchings.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Kim R. Helper, District Attorney General; and Derek K. Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual Background

This case has a rather complicated procedural history that we will set out in detail. On August 8, 1994, in the Williamson County Circuit Court, the Defendant pleaded guilty to possession of contraband in a penal institution, a Class C felony. See Tenn. Code Ann. § 39-16-201. Thereafter, the trial court imposed a sentence of eight years in the Department of Correction; this sentence was suspended, and the Defendant was placed on ten years of intensive probation. The probation order reflects that the probationary period began on October 31, 1994, and was to end on October 31, 2004. Judgment was entered against the Defendant on November 11, 1994. After successfully completing ten months of intensive probation, the Defendant was transferred to regular probation.

On June 17, 1998, the Defendant was arrested in Gulfport, Mississippi on a federal charge for possession of approximately one hundred pounds of marijuana with the intent to sell. As a result of his arrest in Mississippi, a revocation warrant was issued in Williamson County on June 22, 1998. The Defendant was convicted of the federal charge. Phone records indicate that, while the Defendant was incarcerated in Mississippi on the conviction, his attorney spoke with Assistant District Attorney General Derek Smith[1] on January 22, 1999, and June 23, 1999. Just two days after the June 23, 1999 phone call, on June 25, the Defendant was placed on federal probation, which included random drug testing, outpatient substance abuse counseling, and payment of a $1,000 fine. According to phone records, on June 29, 1999, following the Defendant's release from federal custody and placement on federal probation, the Defendant's attorney talked with Sandra Rutland[2] "re: reporting to probation in TN," and he also had a phone conference with Sandra Rutland and Agent Joey Kimble of the Tennessee Drug Task Force. Phone records reflect another phone call by the Defendant's attorney on July 1, 1999, showing a discussion with the Defendant and his probation officer in Tennessee and a phone call to the "US Attorney and Agent." Later in July 1999, the Defendant met with Agent Kimble in Tennessee; however, the Defendant was not served with the outstanding warrant at this time. The Defendant successfully completed his federal probationary period and was released from probation on June 24, 2002.

In 2005, the Defendant was arrested in Putnam and White Counties in Tennessee. He was convicted in White County for aggravated assault on August 22, 2006, and in Putnam County for theft over $1,000 on December 19, 2006. Under the terms of the plea agreement, he received three years of probation for these offenses. Thereafter, the Defendant was arrested on October 24, 2007, in Jones County, Georgia for possession of burglary tools and theft. He was extradited to Tennessee for the pending warrant charging him with violation of probation for the possession of contraband in a penal institution conviction.

---

[1] We note that Mr. Smith is also the prosecutor in the present proceedings.

[2] It is unclear from the record who Sandra Rutland is and what her role was in the Defendant's case.

The June 22, 1998 violation warrant was finally served on the Defendant on November 27, 2007. The warrant was then amended to include the Defendant's convictions in Putnam and White Counties and his Georgia arrest. On December 11, 2007, the Defendant appeared in court and was served with the amended violation warrant, at which time the parties agreed to continue the matter until a later date.

The Defendant filed a motion to dismiss on February 14, 2008, on the basis that the lengthy delay between the issuance and service of the warrant violated his constitutional right to a speedy probation revocation hearing. At the request of the defense due to the fact that the Defendant was in court in Putnam County, the parties agreed to a continue the matter again from February 19, 2008, to March 31, 2008. Following a hearing on the motion to dismiss on March 31, the trial court denied the motion, and the hearing on the probation violation was continued.

At the April 3, 2008 revocation hearing, the Defendant, while not admitting to the violation, stipulated to the facts contained in the warrants. He requested, however, that the court consider the time delay in serving the warrant and his current health issues.

The Defendant testified that he served one year and one week in federal custody on the Mississippi drug conviction. He stated that this was a reduced sentence due to the fact that he had assisted authorities with catching a "king pin[]" who had skipped out on his bond.

When asked if he was informed of any warrants or holds following his release from federal custody, the Defendant testified that there had been multiple conversations between his attorney and law enforcement officials, particularly Agent Joey Kimble in Tennessee, where he "could do some more cooperation work along those lines[.]" He was told to report to Agent Kimble when he returned to Tennessee. Upon his return, the Defendant located Agent Kimble and signed a "confidential informant contract" with him, for a period lasting ten years, and he was not to inform anyone of his confidential informant status. The Defendant stated that, at some point in time, at the request of Agent Kimble and Customs Officer Randy Walsh, he gathered some information about alleged criminal dealings and relayed this information to them; however, they never responded to him. The Defendant produced an old card with a pager number for Agent Kimble on it.

Following his incarceration in Mississippi, the Defendant returned to his home in Sparta, Tennessee, where he had lived for thirty years. He reported to a federal probation office in Cookeville; his probation officer was Burton Putnam. When asked if he reported to state probation at that time, the Defendant replied that he informed Mr. Putnam he was also on state probation but believed that his federal and state probation "were run together sort of hit—you know, hand in hand tied at the hip at that particular point." Moreover, according to the Defendant, Mr. Putnam explained to him that he checked NCIC every six months and that, if there were outstanding warrants for the Defendant, then they would be aware of that information. When he successfully completed probation with Mr. Putnam, the Defendant asked if he had any other obligations, and Mr. Putnam, replied, "No. . . . You know, from what I see with my records and my checks, . . . you're free to go, . . . you're a free man, you can continue to travel as you have in the past."

The Defendant affirmed that he was arrested in Putnam and White Counties in 2005, that he pleaded guilty to these charges, and that he was placed on state probation as a result. The Defendant testified that he only served a few days in jail on these offenses and that he reported to his probation officer as directed. According to the Defendant, he had three different probation officers while on state probation. The first probation officer made him fill out forms documenting his criminal history, and he included his Williamson County conviction. At all times, he reported to the same probation office, which also was the same office he reported to when he was on probation out of Williamson County. According to the Defendant, no probation officer ever informed him of any outstanding warrants; the Defendant believed that he did not have "anything still out there."

The Defendant testified that he was pulled over in Georgia on a routine traffic stop in October 2007. Ultimately, the police searched the vehicle and discovered the Defendant's "work tools" in it; he "did some contracting." The police ran an NCIC check on him and found a hold on him. He was arrested and taken to jail. According to the Defendant, Georgia officials said that "this doesn't quite play out the way . . . we thought it did" seeing that it was the Defendant's work truck, that the Defendant should sign extradition papers back to Tennessee, and that Georgia officials were "going to forget about this . . . ." It was then he learned that the hold was due to the conviction out of Williamson County. The Defendant believed the Georgia charges had been dropped.

The Defendant then described his myriad of medical problems: testicular cancer requiring him to undergo radiation treatments, Hepatitis C requiring him to take Interferon, cirrhosis of the liver, post-traumatic stress disorder, and diabetes. The Defendant introduced a letter from his doctor at the Veterans Administration (VA) Hospital, wherein the doctor listed the Defendant's numerous medical issues and concluded that the Defendant "has complex medical and psychiatric issues that would be best managed if he was not incarcerated." He testified that he had medical coverage with the VA and that, if he was incarcerated, then he and his family would lose his VA benefits. He was unsure what would happen with his TennCare coverage.

Additionally, the Defendant testified that he was the primary caretaker for his very ill mother. He testified that his wife, his seven-year-old daughter, and one of his eighteen-year-old twin boys lived with him.

On cross-examination, the Defendant acknowledged that he was a persistent offender at the time he was sentenced on the possession of contraband in penal institution conviction. He conceded that his criminal history included convictions for aggravated assault, attempted kidnapping, grand theft, possession of cocaine, theft over $500, simple assault, simple possession of drugs, assault and battery, and resisting arrest. The Defendant agreed that he was now a career offender.

On redirect, the Defendant testified that he had a drug and alcohol problem, for which he saw an addictionologist monthly. He stated that he went through outpatient treatment and attended alcoholics and narcotics anonymous (AA and NA) on a regular basis. According to the Defendant, his family attended AA and NA meetings with him to support him. He claimed he had been "clean"

for eleven years before he "had a slip" and that he had now "been clean" again for almost three years. The trial court noted that the Defendant's wife had been present throughout the proceedings.

At the conclusion of the hearing, the trial court revoked the Defendant's probation and ordered him to serve the remainder of his eight-year sentence in the Department of Correction. The revocation order provides as follows:

> [T]he [c]ourt finds it very relevant that following the Defendant's completion of [f]ederal [p]robation in 2002, the Defendant still had another two (2) years of [s]tate [p]robation in which he did not report to a probation officer. The court finds that the [m]otion was properly filed, but is without merit based upon the Defendant not reporting for two (2) years. The [c]ourt finds that the Defendant did not attempt to allude or evade and was in essence hiding in plain sight. The [c]ourt further finds that a year delay in the serving of the probation violation does not trigger a basis for dismissal.

The trial court also gave the Defendant jail "credit for time in federal prison" and "credit for any time served anywhere." This appeal followed.

**Analysis**

On appeal, the Defendant argues that the trial court abused its discretion in revoking probation because the proceedings were unnecessarily delayed. He contends that the State has not been timely in its pursuit of revocation and, therefore, that the trial court should have granted the motion to dismiss the violation warrants for violation of his right to a speedy hearing.

A probation revocation proceeding is a continuation of a criminal prosecution and thus falls within a defendant's constitutional right to a speedy trial. U.S. CONST. amends. XI, XIV; TENN. CONST. art. I, § 9; Allen v. State, 505 S.W.2d 715 (Tenn. 1974). A trial court must carefully balance societal interest in punishing criminals against a defendant's interest in a speedy trial, because dismissal of charges is the only available remedy for violation of the right. State v. Bishop, 493 S.W.2d 81, 83 (Tenn. 1973). In Bishop, our Supreme Court adopted factors articulated by the United States Supreme Court as the relevant analytical framework for alleged violations of the right to a speedy trial:

> (1) The length of the delay;
> (2) the reason for that delay;
> (3) the defendant's assertion to his right to speedy trial; and
> (4) the prejudice to the defendant.

Id. at 83-84 (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)).

In Bishop, the delay occurred after arrest and arraignment of the defendant, see id. at 82-83, in contrast to the instant interval between issuance of the probation violation warrant and the

revocation hearing. Our Supreme Court has expressly held that "a probation revocation proceeding is a continuation of the criminal prosecution," meriting consideration of the enumerated constitutional safeguards. Allen, 505 S.W.2d at 719. Although the Allen analysis did not explicitly apply the Bishop factors, a panel of our Court in Blackwell v. State, 546 S.W.2d 828, 830 (Tenn. Crim. App. 1976), applied them in a subsequent analysis of a delay of a probation revocation hearing.

We apply those factors in the instant case. The question of whether the right to a speedy trial has been denied is a mixed question of law and fact and, therefore, subject to de novo review. See State v. Hawk, 170 S.W.3d 547, 549 (Tenn. 2005).

## I. Length of delay

After the probation violation warrant was issued on June 22, 1998, eight years and five months passed before the warrant was served on the Defendant. Ultimately, on March 31, 2008, a hearing was held on the motion to dismiss, and the revocation hearing occurred on April 3, 2008. Any delay approaching one year generally triggers further inquiry into the remaining three factors. See State v. Utley, 956 S.W.2d 489, 494 (Tenn. 1997).

The State cites to State v. Timothy Tillery, No. E2000-01996-CCA-R3-CD, 2001 WL 921754, (Tenn. Crim. App., Knoxville, Aug.16, 2001), for the proposition that the Defendant's right to a speedy trial was not implicated until the warrant was actually served on November 27, 2007. Because the delay between his arrest and revocation hearing did not approach one year, further analysis on the remaining factors would be unnecessary if we credit this argument. First we note that Tillery's precedential value is diminished due to the fact Judge Tipton wrote a separate concurring opinion[3] and Judge Witt concurred in results only.

The Tillery opinion relied on Utley, 956 S.W.2d 489, in support of its conclusion that a defendant's right to a speedy probation revocation hearing is not triggered until the defendant is arrested on the probation violation warrant:

> [I]n Utley, 956 S.W.2d 489, a case which post-dates Allen by twenty-three years, our supreme court explicitly held "that the issuance of an arrest warrant alone does not trigger a speedy trial analysis and that the right to a speedy trial is not implicated until there is an arrest or a formal grand jury accusation." 956 S.W.2d at 491. Because there is no formal grand jury accusation in a probation revocation proceeding, it would appear that an actual arrest for the probation violation would be the triggering factor for a speedy trial right.

---

[3] Judge Tipton disagreed with the opinion's analysis and concluded that the defendant's speedy trial right was triggered when the detainer from Blount County was lodged with the Department of Correction. Tillery, 2001 WL 921754, at *6 (Tipton, J., concurring). The trial court in this case also took a different view, finding that the Defendant's speedy trial right began when he was placed on state probation again in August 2006 and the warrant was not discovered at that time.

<u>Tillery</u>, 2001 WL 921754, at *2.

We first note that in <u>Utley</u>, the issue presented did not involve a speedy hearing on a probation violation warrant. The issue in <u>Utley</u> involved a speedy trial on original criminal charges. We decline to adopt the rationale of <u>Tillery</u> and instead conclude that <u>Allen</u> is still the prevailing law under the circumstances presented herein. In <u>Allen</u>, a delay of two years and eight months between issuance of a revocation warrant and the revocation hearing merited consideration under the defendant's right to a speedy trial. <u>See</u> <u>Allen</u>, 505 S.W.2d 715. The defendant in <u>Allen</u> was not served with the probation violation warrant until the day of the probation revocation hearing. He had been incarcerated on other charges, and no action was taken regarding the probation violation warrant until the defendant inquired about it. <u>Id.</u> at 716.

This issue was squarely addressed in <u>Allen</u>, and we decline to extend <u>Utley</u> to probation revocation proceedings in the context of when a defendant's speedy trial right is triggered. It is precisely because there is no formal grand jury accusation in probation revocation proceedings, as opposed to a criminal charge, that we will not extrapolate the rationale from <u>Utley</u> to the present situation. Probation revocation proceedings are commenced when the trial judge issues the warrant; the warrant serves as the formal accusation. <u>See</u> Tenn. Code Ann. § 40-35-311(a). No further action is required.[4] In our view, the issuance of the warrant is the triggering mechanism.

Additionally, in <u>Tillery</u>, it was noted that recent cases of this Court cited <u>Allen</u> for the proposition that a lengthy delay between the issuance of a probation violation warrant and the hearing on the probation revocation may violate a defendant's right to a speedy trial. <u>Tillery</u>, 2001 WL 921754, at *2 n.6 (citing <u>State v. Randy R. Wilson</u>, No. M2000-01537-CCA-R3-CD, 2001 WL 523368, at *2 (Tenn. Crim. App., Nashville, May 16, 2001); <u>State v. Lawrence Ralph, Jr.</u>, No. M1999-01635-CCA-R3-CD, 2000 WL 775592, at *1-2 (Tenn. Crim. App., Nashville, June 16, 2000)). We find this to be the prevailing view after the <u>Tillery</u> decision as well. <u>See</u> <u>State v. Mathis Lamar Meadows</u>, No. W2006-02534-CCA-R3-CD, 2007 WL 1215050, at *2-3 (Tenn. Crim. App., Jackson, Apr. 24, 2007); <u>State v. John William Matkin</u>, III, No. E2005-02701-CCA-R3-CD, 2007 WL 120048, at *5 (Tenn. Crim. App., Knoxville, Jan. 18, 2007); <u>State v. Markettus L. Broyld</u>, No. M2005-00299-CCA-R3-CO, 2005 WL 3543415, at *1-2 (Tenn. Crim. App., Nashville, Dec. 27, 2005).

It follows, then, that the almost nine-year delay between the issuance of the warrant and the Defendant's probation revocation hearing is "presumptively prejudicial." <u>See</u> <u>Barker</u>, 407 U.S. at 530. The length of the delay, therefore, requires us to inquire into the remaining factors.

## II. Reasons for the Delay

In <u>State v. Wood</u>, 924 S.W.2d 342 (Tenn. 1996), the Tennessee Supreme Court identified several possible reasons for delay:

---

[4] Once a defendant is brought into custody on the warrant, the trial judge shall inquire into the allegation of a probation violation "at the earliest practicable time." <u>See</u> Tenn. Code Ann. § 40-35-311(b).

> (1) Intentional delay for the purpose of tactical advantage over the defense or to harass the defendant;
>> (2) bureaucratic indifference or negligence;
>> (3) delay necessary to the fair and effective prosecution of the case; and
>> (4) delay acquiesced in or caused by the defendant.

924 S.W.2d at 346-47. Factors (1) and (2) are weighed, heavily and somewhat less heavily, respectively, against the state. Id. at 346-47. Factor (3) is weighed against neither party, and factor (4) is weighed against the defendant. Id. at 347.

Here, the delay appears to be attributable to bureaucratic indifference or negligence. "Delays between indictment and trial which are occasioned . . . by the prosecuting attorney . . . must be considered the responsibility of the State." State v. Kolb, 755 S.W.2d 472, 474 (Tenn. Crim. App. 1988) (citations omitted). The State neglects to point out that a "hold" could have been placed upon the Defendant during the time he was in federal custody if the State intended to pursue the allegation of a probation violation following his release. In fact, defense counsel conversed with the Tennessee district attorney general's office while the Defendant was incarcerated; their last conversation occurred just two days before the Defendant's release from jail. After his incarceration in Mississippi, the Defendant returned to his home in Sparta, Tennessee, where he had lived for thirty years. He reported to federal authorities and apparently worked as a confidential informant for the Tennessee Drug Task Force. The Defendant testified that, based on the information he had received, he believed that his federal and state probation "were run together sort of hit—you know, hand in hand tied at the hip at that particular point." Also, according to the Defendant he asked his federal probation officer Burton Putnam if he had any other obligations after successfully completing his probation in 2002, and Mr. Putnam replied, "No. . . . You know, from what I see with my records and my checks, . . . you're free to go, . . . you're a free man, you can continue to travel as you have in the past." Furthermore, following his convictions in White and Putnam Counties, the Defendant was again placed on state probation, and the warrant went undiscovered by the State. The State offered no valid reason for the delay.

The inordinate delay between June 22, 1998, and service of the warrant on November 27, 2007, can only be charged to lack of due diligence by the State. The delay in this case was unnecessary and "the product of bureaucratic miscommunication or indifference . . . which, reasonably speaking, was not unavoidable." See State v. Matthew Melton Jackson, No. M2005-01374-CCA-R3-CD, 2006 WL 1896350, at *4 (Tenn. Crim. App., Nashville, July 7, 2006) (citing Kolb, 755 S.W.2d at 474-75); see also Dickey v. Florida, 398 U.S. 30, 51-52 (1970) (Brennan, J., concurring). "[S]heer bureaucratic indifference weighs heavily against the government." United States v. MacDonald, 632 F.2d 258, 262 (4th Cir.1980). Due to the degree of negligence involved in this case, this factor must be assigned considerable weight. See State v. Monty Earl Picklesimer, No. M2003-03087-CCA-R3-CD, 2004 WL 2683743, at *4 (Tenn. Crim. App., Nashville, Nov. 24, 2004).

## III. The Defendant's Demand for Speedy Trial

A defendant must seek a swift trial by timely asserting that right.[5]  Both the Tennessee and United States Supreme Courts have recognized that "an accused who is unaware that charges are pending against him or her, as is often the case where an indictment has been sealed and not served, cannot be penalized for his or her failure to assert the speedy trial right." Wood, 924 S.W.2d at 351 n. 13 (citing Doggett v. United States, 505 U.S. 647, 652-54; Wright v. State, 405 S.W.2d 177, 180 (Tenn. 1966)).  The Defendant is under no duty to bring himself to trial; the "primary burden, after all, is on the courts and prosecutors to assure that cases are brought to trial." Id. at 347; see also Jackson, 2006 WL 1896350, at *4 .  It appears from the record that the Defendant was unaware of the probation violation warrant until after his October 2007 arrest in Georgia; over eight years and five months had passed after the warrant's issuance but before it was served on the Defendant. Therefore, the Defendant "cannot be penalized for failing to assert his speedy trial right earlier." State v. Simmons, 54 S.W.3d 755, 760 (Tenn. 2001).  Just two and half months after service of the warrant, the Defendant filed a motion to dismiss the warrant alleging a violation of his right to a speedy trial.  Once he became aware of the allegation, he timely made a demand for the right. Therefore, this factor also weighs in favor of dismissal of the warrant.

## IV. Prejudice Against the Defendant

The final and most important factor in the Barker analysis is whether the accused has suffered prejudice from the delay.  407 U.S. at 532.  When evaluating this factor, courts must be aware that the right to a speedy trial is designed (1) to prevent undue and oppressive incarceration prior to trial, (2) to minimize anxiety and concern accompanying public accusation, and (3) to limit the possibilities that long delay will impair the defense.  Bishop, 493 S.W.2d at 85; see Smith v. Hooey, 393 U.S. 374, 378 (1969).  The Defendant argues that he suffered prejudice by the delay because he lost the possibility of serving this sentence concurrently with the sentence he served in federal custody and that the correctional system is not equipped to handle his present medical needs.

While the prejudice factor is the most important of the factors identified in Barker, courts must examine the totality of the factors and each and every circumstance relating to those factors in determining when the defendant has been denied his right to a speedy trial.  Picklesimer, 2004 WL 2683743, at *5. In Hooey, 393 U.S. 374, the United States Supreme Court determined that a "defendant already in prison might receive a sentence at least partially concurrent with the one he is serving . . . [unless] trial on the pending charge is postponed . . . ." 393 U.S. at 378.  In that case, the Court identified the lost possibility of concurrent sentencing as one harm that could result to an incarcerated prisoner and said this lost possibility relates to the interest in avoiding undue and oppressive pretrial incarceration.  Simmons, 54 S.W.3d at 755.  Similarly, in this case, the Defendant

---

[5]  At the motion to dismiss hearing, the State argued that the Defendant could not complain about his speedy trial rights due to the two continuances agreed to and sought by the defense.  The trial court did note that both continuances were "not in any way meant for the purposes of delay."  We agree with the trial court that valid reasons existed for both continuances.  The motion to dismiss hearing occurred just four months after the Defendant received the probation violation warrant.  The Defendant's demand for a speedy trial was not negated by the subsequent continuances.

could have addressed the issue of concurrent sentencing or early parole had the State conducted the prosecution with due diligence.[6]  See Picklesimer, 2004 WL 2683743, at *5.

The Defendant was unaware of the allegation until November 2007; the evidence, therefore, is not particularly compelling as to whether he experienced undue anxiety or concern as a result of public accusation.  There was evidence, however, that the Defendant suffered from numerous medical conditions which he acquired during the almost nine-year delay and that his treatment could be compromised if incarcerated.  See id.  As for the third factor,

> while it was not conclusively established that the defense would have been impaired, . . . an adverse effect upon preparations is not essential to the establishment of the denial of a right to speedy trial.  In Doggett, for example, the Supreme Court dismissed the prosecution, finding a delay of over eight years due to the negligence of the prosecution to be 'egregious' and involving the presumption of prejudice, 'compromis[ing] the reliability of a trial in a ways that neither party can prove or, for that matter, identify.'

See Picklesimer, 2004 WL 2683743, at *5 (quoting Doggett, 505 U.S. at 655).  Moreover, "the presumption that pretrial delay has prejudiced the accused intensifies over time." Doggett, 505 U.S. at 655.  We find Doggett applicable to facts presented in this case.

In our view, an examination of the Barker factors establishes that the Defendant has been denied his right to a speedy probation revocation hearing due to the nine-year delay between the issuance of the probation violation warrant and the Defendant's revocation hearing.  A dismissal on grounds of the denial of a speedy trial is warranted.

## Conclusion

Because the Defendant was denied his right to a speedy trial, the judgment of the Williamson County Circuit Court is reversed.  The probation violation warrants are dismissed.

_____
DAVID H. WELLES, JUDGE

---

[6]  The trial court in this case, presumably in an attempt to minimize the prejudice to the Defendant, gave the Defendant credit for time served in federal prison and for time served "anywhere."  As noted by the State in its brief, this was not permitted by statute.  See Tenn. Code Ann. § 40-23-101(c).  Moreover, given the length of time that has passed, the extent of the prejudice is unclear.