IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 12, 2004

## STATE OF TENNESSEE v. MONTY EARL PICKLESIMER

**Appeal from the Criminal Court for Davidson County**
**No. 96-D-1874     Steve R. Dozier, Judge**

---

**No. M2003-03087-CCA-R3-CD - Filed November 24, 2004**

---

The defendant, Monty Earl Pickelsimer, entered negotiated pleas of guilt to theft of property having a value of more than $10,000.00 or more but less than $60,000.00 and theft of property having a value of more than $1000.00 more but less than $10,000.00. The plea agreement included concurrent Range I sentences of three years on each offense and certified a question of law for appeal as to whether the defendant was denied a speedy trial under the state and federal constitutions. Because the defendant was denied his right to a speedy trial, the judgment is reversed, the conviction is set aside, and the cause is dismissed.

**Tenn. R. App. P. 3; Judgments of the Trial Court Reversed**

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID H. WELLES and JOHN EVERETT WILLIAMS, JJ., joined.

Fikisha Swader (at trial) and Jeffrey A. DeVasher (on appeal), Assistant Public Defenders, for the appellant, Monty Earl Picklesimer

Paul G. Summers, Attorney General & Reporter; Seth P. Kestner, Assistant Attorney General; and Pamela Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant, an employee of the Dollar General Corporation, committed separate thefts at his place of employment on December 23, 1995, and February 10, 1996. The first theft involved more than $10,000.00. According to the stipulation of facts, the second theft involved more than $1000.00. See T.C.A. § 39-14-103. On October 11, 1996, the Davidson County grand jury returned indictments on each of the two counts of thefts. In the meantime, the defendant had been arrested on other charges for which he made bail. After also making bail on the Davidson County indictments, the defendant failed to appear at his scheduled arraignment. There was no activity in the Davidson County Criminal Court until June 9, 1997, when the bail bonding company notified

the court clerk that the defendant was in jail in Bradley County. Over fifteen months later, on September 29, 1998, the defendant, while incarcerated in the Dickson County Jail, made a written, "formal request for a speedy trial in your jurisdiction on all charges pending." In the letter, the defendant notified the clerk that he was in Dickson County and soon would be transferred to the Department of Correction. The letter was mailed to the Nashville Metropolitan Police Department with a copy provided to the office of the District Attorney General. Omeka Warfield Fuller, a paralegal in the Davidson County District Attorney's Office, received the letter. She then mailed the letter to the Davidson County Criminal Court Clerk asking that the defendant be returned from Dickson County for the arraignment. Ms. Fuller did not follow up on her request and neither the clerk nor the office of the district attorney took further action. In August of 2003, while the defendant was serving a ten-year sentence in the Department of Correction for crimes unrelated to the thefts in Davidson County, the parole board discovered the pending 1996 indictments. On October 17, 2003, over five years after the letter and almost eight years after the first offense, the defendant filed a motion to dismiss for lack of a speedy trial. There was a hearing on the motion, and on November 13, 2003, the trial court denied relief.

It was established at the hearing that the defendant, who was serving a seventeen-year sentence on various convictions arising out of Bradley, Dickson, and Marion Counties, had been in jail or prison since May of 1997. He complained that he had been denied parole in 2003 because of the pending charges in Davidson County. The defendant asserted that he had been diagnosed with depression, psychotic tendencies, and post traumatic stress disorder. It was his contention that, as a result of the delay, he was no longer able to locate Mindy Clegg, a potential witness at the trial.

The defendant asserted that Ms. Clegg would have testified that he denied any involvement in the crimes. He claimed that there were other witnesses that would have been helpful, but that he was unable to find them, because he did not know their full names. The defendant also claimed that within the past few years he had suffered several blows to the head and had no recollection of the events surrounding these charges. At the hearing on the motion to dismiss, Nashville Metropolitan Police Detective Harold Dean Haney testified that it was his opinion that Ms. Clegg, who had cooperated with his office in the investigation of the defendant, did not have any information which would have been helpful to the defendant. While acknowledging that Ms. Clegg was still in the Davidson County area, the officer asserted that the defendant had provided incriminatory statements as to each of the two thefts.

Shortly after the hearing on the motion to dismiss, the trial court, while acknowledging that the length of the delay was sufficient to trigger further inquiry, denied relief. Attributing the delay to "bureaucratic negligence," the trial court found that the defendant had not been subjected to any undue pretrial incarceration and that the defendant had not been prejudiced by any unavailability on the part of Ms. Clegg, who had "tipped police of the defendant's involvement in this offense."

In this appeal, the defendant argues that the length of the delay between the indictments and the motion to dismiss, almost seven years for each offense, is presumptively prejudicial. It is his argument that each of four factors utilized in the determination of whether a defendant has been

denied his right to a speedy trial weighs in favor of a dismissal. The defendant claims that his own memory loss may be sufficient to establish prejudice. See State v. Glen T. Tidwell, M2000-00538-CCA-R3-CD (Tenn. Crim. App., at Nashville, July 9, 2001) (holding that the appellee was prejudiced by the delay of the state in bringing him to trial, because the appellee could not remember the surrounding events).

Our scope of review when a trial court makes an application of law to the facts of the case is de novo as a mixed question of law and fact. The question of whether the right to a speedy trial has been denied is a mixed question of law and fact and, therefore, subject to de novo review on appeal. State v. Gary Lee Miller, No. 01C01-9807-CR-00290 (Tenn. Crim. App., at Nashville, March 6, 2000) (citing Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998); Harries v. State, 958 S.W.2d 799, 802 (Tenn. Crim. App. 1997)) .

The right to a speedy trial is, of course, constitutionally based. U.S. const. amend. VI; Tenn. Const. art. I, § 9. Rule 48 of the Tennessee Rules of Criminal Procedure provides as follows:

> If there is unnecessary delay in presenting the charge to a grand jury against a defendant who has been held to answer to the trial court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, presentment, information or complaint.; see also Tenn. Code Ann. § 40-14-101.

Tenn. R. Crim. P. 48(b).

In State v. Bishop, 493 S.W.2d 81 (Tenn. 1973), our supreme court adopted a four-factor analysis for determining whether one has been denied his entitlement to a speedy trial. Adopting a test first established in Barker v. Wingo, 407 U.S. 514 (1972), our high court created a balancing test based upon the following factors:

> (1) the length of the delay
> (2) the reason for the delay
> (3) whether the defendant asserted a claim to his right and
> (4) whether the defendant was prejudiced by the delay.

Bishop, 493 S.W.2d at 84. The length of the delay is a triggering mechanism. Until there is some delay which is presumptively prejudicial, characterized in some federal and state cases as being from one to two years, there is no necessity for inquiry into the other factors. Barker, 407 U.S. at 530. Prejudice, the most important of the considerations, is assessed in light of three interests to the defendant: (1) to prevent oppressive pretrial incarceration; (2) to minimize the anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. Id. at 532. "Serious crimes are . . . expected to take longer than 'ordinary street crimes [s].'" State v. Thomas, 818 S.W.2d 350, 362 (Tenn. Crim. App. 1991) (quoting Barker, 407 U.S. at 531) (alteration in original). Some courts have held that " a two-year delay is not inordinately long." Id. at 363. Other courts, however, have found that a delay of one year or longer "marks the point at which courts deem the delay unreasonable enough to trigger the Barker inquiry." Doggett v. United States, 505 U.S. 647, 652 (1992).

Here, there was a seven-year delay from the indictment until the motion to dismiss. That is far more than the delay in Barker, approximately 20 months, and even greater than the five-year delay in State v. Kolb, 755 S.W.2d 472 (Tenn. Crim. App. 1988). Further evaluation of the applicable factors is, therefore, warranted.

The second Barker factor, the reason for the delay, generally falls into four categories: (1) intentional delay by the state to gain a tactical advantage or to harass the defendant; (2) negligence; (3) delay necessary to effectively prosecute the case; and (4) delay caused by or acquiesced in by the defendant. State v. Wood, 924 S.W.2d 342, 346-47 (Tenn. 1996). Intentional delay to gain undue advantage or harass the defendant weighs heavily against the state while delay through the state's negligence is given a lesser weight. The third type of delay, that which is necessary to prosecute the case, does not weigh in favor of or against either party. Delay caused by the defendant weighs against the defendant. Id.

In this instance, the trial court classified the delays as bureaucratic negligence, implicitly referring to both the clerk of the court and the office of the district attorney general. In Kolb, this court ruled that delays between the indictment and trial, including those caused by "the prosecuting attorney or members of the Department of Correction," must be considered the responsibility of the state. 755 S.W.2d at 474. In Dickey v. Florida, 398 U.S. 30, 51-52 (1970), Justice Brennan, concurring, observed as follows:

> A negligent failure by the government to ensure speedy trial is virtually as damaging to the interests protected by the right as an intentional failure; when negligence is the cause . . . the crucial question in determining the legitimacy of governmental delay may be whether it might reasonably have been avoided- - whether it was unnecessary.

As in Kolb, the delay in the case at issue was unnecessary and "the product of bureaucratic miscommunication or indifference . . . which, reasonably speaking, was not unavoidable." Kolb, 755 S.W.2d at 474-75. "[S]heer bureaucratic indifference weighs heavily against the government." United States v. MacDonald, 632 F.2d 258, 262 (4th Cir., 1980). In Kolb, this court identified several prior cases wherein the defendant, who had been "lost" in the correctional system, was denied his right to a speedy trial. 755 S.W.2d at 475 (citing Wright v. State, 218 Tenn. 610, 405 S.W.2d 177 (1966); Arrowsmith v. State, 131 Tenn. 480, 175 S.W. 545 (1915); State v. Wallace, 648 S.W.2d 264 (Tenn. Crim. App. 1980)). In summary, this factor must be assumed against the state and, because of the degree of negligence involved, must be assigned considerable weight.

The third factor relates to the timing of the assertion of the right to a speedy trial. Because the defendant is under no duty to bring himself to trial, the absence of a demand for a speedy trial does not amount to a waiver of the issue. Bishop, 493 S.W.2d at 84. Nevertheless, the timeliness of the demand is a factor to be considered when determining whether the defendant has been denied his constitutional right, whether under the state or the federal constitution. Id. In Barker, the Supreme Court found that " the defendant's assertion of his speedy trial right . . . is entitled to strong

evidentiary weight in determining whether the defendant is being deprived of the right." 407 U.S. at 531-532.

Here, the defendant made a formal demand for a speedy trial by letter dated September 29, 1998, approximately twenty-three months after the indictment and over five years before the hearing on the motion to dismiss. The letter was addressed to the Metropolitan Police Department in Nashville and a copy was delivered to the office of the Davidson County District Attorney General. Incarcerated in the Dickson County Jail at the time of the letter, the defendant also provided notice that, "you can easily locate me by contacting the Department of Correction[ ]." The record established that the defendant did not know that the charges were still pending until August of 2003, when there were only thirty days left before his parole eligibility date. During the hearing on the motion to dismiss, the defendant testified that he had checked for a detainer "every year" since his incarceration, "at least . . . four or five classifications . . . and it wasn't there." While other facts were at issue, the state made no effort to contradict this point.

Because the defendant made a timely assertion of his constitutional right to a speedy trial and the state failed to act in response, this factor should weigh in favor of the defendant. Again, the defendant is under no duty to bring himself to trial. When he has made a demand for the right and the state has failed to respond, the factor must weigh more heavily in favor of dismissal.

As the final factor, this court must consider what prejudice, if any, the defendant has suffered because of the delay between the indictment and trial. In Barker, the United States Supreme Court expressly rejected the notion that an affirmative demonstration of prejudice was essential to establish a denial of a right to a speedy trial. That concept was confirmed in Moore v. Arizona, 414 U.S. 25 (1973). The Court in Barker identified three relevant interests in assessing the prejudice factor: (1) whether there was an undue or oppressive pretrial incarceration; (2) whether the defendant suffered anxiety or concern; and (3) whether there was any impairment in the preparation of a defense, considered the most important of the three considerations pertaining to potential prejudice.

As indicated, the trial court concluded that there was no undue incarceration because the defendant was serving a sentence in the Department of Correction for a significant portion of the seven-year delay. It also concluded that the defendant had failed to establish how the absence or unavailability of Ms. Clegg would have hampered the defense or how the state might have gained a tactical advantage by virtue of the delay. This court does not disagree with either of those findings.

While the prejudice factor, however, is the most important of the factors identified in Barker, courts must examine the totality of the factors and each and every circumstance relating to those factors in determining when the defendant has been denied his right to a speedy trial. In Smith v. Hooey, 393 U.S. 374, 378 (1969), the United States Supreme Court determined that a "defendant already in prison might receive a sentence at least partially concurrent with the one he is serving . . . [unless] trial on the pending charge is postponed . . . ." In that case, the High Court observed that "the duration of his present imprisonment may be increased, and the conditions under which he must serve his sentence greatly worsened, by the pendency of another criminal charge outstanding against

him."  Id.  Similarly, in this case, the defendant could have addressed the issue of concurrent sentencing or early parole had the state conducted the prosecution with due diligence.

Although the record of the evidence is not particularly compelling as to whether the defendant experienced undue anxiety or concern as a result of the delay of the trial, there was at least some evidence that the defendant suffered depression and had received treatment for a mental disorder.  While it was not conclusively established that the defense would have been impaired, as the most important of the three-pronged prejudice test, an adverse effect upon  preparations is not essential to the establishment of the denial of a right to speedy trial.  In Doggett, for example, the Supreme Court dismissed the prosecution, finding a delay of over eight years due to the negligence of the prosecution to be "egregious" and involving the presumption of prejudice, "compromis[ing] the reliability of a trial in a ways that neither party can prove or , for that matter, identify."  505 U.S. at 655.  Those facts are comparable to the circumstances here.

In our view, the totality of the circumstances and the utilization of the pertinent factors as first identified in Barker establish that the defendant has been denied his right to a speedy trial.  In this instance, the trial court placed too much emphasis on the third part of the prejudice test.

Under Barker, all other factors including at least two of the three components measuring prejudice, weigh heavily in favor of the defense.  Accordingly, the judgments are reversed and the causes are dismissed.

_____
GARY R. WADE, PRESIDING JUDGE