IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 15, 2006

**STATE OF TENNESSEE V. DANIEL BUCK**

**Direct Appeal from the Circuit Court of Robertson County
No. 04-0249   John H. Gasaway, III, Judge**



**M2005-02818-CCA-R3-CD - Filed December 12, 2006**

The appellant was convicted following a jury trial of aggravated rape and aggravated sexual battery and received concurrent fifteen and eight year sentences, respectively.  The appellant contends that the trial court erred in failing to dismiss these charges based on violation of his right to a speedy trial. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit
Court is Affirmed**

J. S. DANIEL, SR.J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, J., and ALAN E. GLENN, J., joined.

Paul G. Summers, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General and Dent Morriss, Assistant Attorney General for the Appellee, State of Tennessee.

Charles S. Bloodworth, Springfield, Tennessee and Roger E. Nell, Clarksville, Tennessee, Attorneys for the Appellant, Daniel Buck.

# OPINION

## Background

Following a jury trial on February 8, 2005, the appellant was convicted of aggravated rape and aggravated sexual battery.  At trial, the appellant chose not to testify and offered no proof.  In this appeal, appellant makes no claim of error relating to his trial.

The petitioner's sole claim in the present case stems from the trial court's pre-trial denial of his motion to dismiss based on a violation of his right to a speedy trial.  In our inquiry it is useful to review the relevant facts relating to the motion to dismiss.

The Robertson County grand jury issued a presentment in its April 1991 term charging the appellant with aggravated rape and aggravated sexual battery. The charges were based on conduct occurring on or about the 11th or 12th of January, 1991. Immediately after the alleged assault in January of 1991, but prior to the return of the April 1991 presentment, the appellant relocated to Michigan where he was charged with two sexual offenses against a minor. The appellant was in custody in Michigan at the time the Robertson County grand jury issued their presentment. Ultimately in 1992, the appellant pled guilty in Michigan on two counts of criminal sexual conduct in the third degree and received sentences of nine to fifteen years in the Michigan penitentiary.

On April 11, 1991, a representative of the district attorney general's office of Robertson County notified the Robertson County sheriff's department that the appellant was located in Michigan and that extradition would be authorized. On December 6, 1991, extradition was initiated via the Michigan governor's office. However, the appellant refused voluntary extradition.

In 1991, 1992 and part of 1993, correspondence was exchanged between officials of the two states. A Tennessee fugitive warrant originally issued against Mr. Buck was dismissed by Tennessee officials for lack of action. In February 1993, an agent of the Robertson County District Attorney's office corresponded with a Michigan appellate defender's office member informing them of the appellant's outstanding charges and an unserved capias for those charges.

May 1993 documents indicate that appellant asked Michigan penitentiary officials about his Tennessee charges. Appellant specifically inquired whether the Michigan officials had exchanged correspondence with Tennessee officials concerning those charges and whether a detainer had been received by Michigan.

On July 9, 1993, Michigan Department of Corrections employee, Mary Hunt, wrote to an official in the Robertson County Sheriff's Department concerning the appellant. In this correspondence, Ms. Hunt explained that appellant was incarcerated in a Michigan facility and that she had spoken with him about the charges. She also indicated she had provided to appellant a copy of the "letter and warrant" that had originated in Robertson County. Ms. Hunt said appellant indicated to her he did not wish to request a speedy disposition of the charges against him in Tennessee. Ms. Hunt concluded in her correspondence "therefore, I am not enclosing Forms II and IV. I will await further action from you."

In June 1994, Michigan Department of Correction officials again corresponded with Robertson County Sheriff Department officials acknowledging receipt of the prior year's correspondence but informing Robertson County that no action had been taken to return appellant to Tennessee to answer to the charges. In this 1994 correspondence, Michigan inquired into the current status of the Tennessee case. Robertson County Sheriff's officials responded that the charges were still pending but that similarly no action had been taken by state officials to return the appellant to face those charges. No further correspondence or related action occurred on the Robertson County charges until thirteen years later. After serving his sentence in its entirety in the Michigan penal system, the appellant was transported to Tennessee to answer to the Tennessee charges.

2

Upon appellant's return to Tennessee, it was determined that the 1991 presentment was defective as some or all of the grand jurors had failed to sign it. However, the victim, who had reached majority age, appeared before the Robertson County grand jury during its July 2004 term. The resulting superseding indictment replaced the earlier defective presentment.

It is this delay the appellant cited as the basis for his motion to dismiss. The trial court denied the motion in part based on the correspondence from the Michigan officials.

## Analysis
## Standard of Review

This Court utilizes the abuse of discretion standard in evaluating the trial court's action in ruling upon the appellant's motion to dismiss the indictment for violation of his speedy trial rights. State v. Harris, 33 S.W. 3d 767, 771 (Tenn. 2000); State v. Jefferson, 938 S.W.2d 1, 14 (Tenn. Crim. App. 1996); Tenn. R. Crim. P. 48(b) (which preserves an accused's right to a speedy trial by providing that the trial court may dismiss the indictment "if there is unnecessary delay in presenting the charge to a grand jury against a defendant who has been held to answer to the trial court, or if there is unnecessary delay in bringing the defendant to trial. . . .").

## Speedy Trial

Both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee an accused the right to speedy trial. This right was also codified in Tennessee Code Annotated section 40-14-101, which provides that: "In all criminal prosecutions, the accused is entitled to a speedy trial, and to be heard in person and by counsel." Coupled with Tennessee Rule of Criminal Procedure 48(b), these authorities authorize a court to dismiss an indictment, presentment, information or complaint if there is unnecessary delay in bringing the defendant to trial.

The purpose of the right of speedy trial was to "protect the accused against oppressive pretrial incarceration, the anxiety and concern due to unsolved criminal charges, and the risk that the evidence would be lost or memories diminished." State v. Utley, 956 S.W.2d 489, 492 (Tenn. 1997) (citing Doggett v. United States, 505 U.S. 647, 654, 112 S.Ct. 2686, 2692, 120 L.Ed.2d 520 (1992)).

In United States v. Marion, 404 U.S. 307, 320 (1971), the United States Supreme Court said that "it is either a formal indictment or information or else the actual restraint imposed by arrest and holding to answer a criminal charge that engaged the particular protections of the speedy trial provisions. . . ." Tennessee adopted this rationale in State v. Wood, 924 S.W.2d 342 (Tenn. 1996). In Wood, the court concluded that a defendant who was charged in a sealed grand jury presentment, was an "accused" for the purpose of the speedy trial provisions because he was "faced with a formal accusation." Id. at 345.

When an appellant claims a denial of his or her speedy trial rights a reviewing court must

engage in a balancing test. The balancing test set forth in Barker v. Wingo, 407 U.S.514 (1972), is used to determine whether the right of speedy trial has been violated. The balancing test "necessarily compels courts to approach speedy trial cases on an *ad hoc* basis. We can do little more than identify some of the factors that courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: length of delay, the reason for the delay, a defendant's assertion of his right, and prejudice to the defendant." Barker, 407 U.S. at 530.

Against the backdrop of these principles, we first consider the length of delay. Until there is some delay which presumptively is prejudicial, it is not necessary to inquire as to the other balancing factors of the speedy trial analysis. Barker, 407 U.S. at 530; State v. Wood, 924 S.W.2d 342 (Tenn. 1996). The reasonableness of the length of the delay depends upon the complexity and nature of the case, but the presumption that the delay has prejudiced the accused intensifies over time. Doggett v. United States, 505 U.S. 647, 652; Wood, 924 S.W.2d at 346. In this case a delay of thirteen years is clearly sufficient to trigger an analysis of the remaining three factors. Here, the lengthy delay weighs favorably for the appellant.

The second factor enunciated in Barker is the reason for the delay. The reasons for delay generally fall into one of four categories: (1) intentional delay to gain tactical advantage over the defense or delay designed to harass the defendant; (2) bureaucratic indifference or negligence; (3) delay necessary to the fair and effective prosecution of the case; and (4) delay caused, or acquiesced in, by the defendant. The first type of delay (intentional) is weighed heavily against the state. The second type (negligence) is also weighed against the state although not as heavily as deliberate delay. The third type of delay is, by definition, justifiable and is not weighed against either party. The fourth type of delay, which is caused or acquiesced in by the defendant, is weighed against the defendant. Wood, 924 S.W.2d at 346-347.

From our review of the record, we find no evidence of bad faith on the part of the state. Instead, the delay in the instant case resulted from the state's negligence in failing to actively pursue appellant's extradition so that the charges might be timely prosecuted. The Court recognizes, however, that the state's negligence was tempered by appellant's acquiescence in this delay. Such a delay here may have impinged upon the appellant's ability to defend himself and may have affected his eligibility for concurrent sentencing, parole and other rehabilitative programs. This factor must similarly be weighed in the appellant's favor.

The third factor examines whether the appellant asserted his right to a speedy trial. Such an assertion may or may not play an important role in the ultimate determination of whether there has been a deprivation of the right to a speedy trial. Barker rejected an outright "demand" rule whereby failure to seek a speedy trial would result in waiver of the right. Barker, 407 U.S. at 529-30. Our supreme court has likewise rejected a rigid demand rule. State v. Bishop, 493 S.W.2d 81, 84 (Tenn. 1973).

We recognize that the primary burden is on the prosecutor and the courts to assure cases are

4

brought to trial on a timely basis. Nonetheless, an appellant's assertion or failure to assert the right to speedy trial is a factor in the overall balancing test. In considering this factor, the Barker court noted, "[a] defendant's assertion of a speedy trial right is entitled to strong evidentiary weight in determining whether the right has been denied, and failure to assert the right will make it difficult to prove it was denied." Barker, 407 U.S. at 531-32.

Here, a review of the record reveals that the appellant first sought to assert his right to speedy trial (via the motion to dismiss) only after completing the service of his Michigan sentence and after being returned to Tennessee. In Barker, the court observed that evidence a defendant did not want a speedy trial would never warrant a finding of a constitutional violation except in "extraordinary circumstances." Id. at 536. Accordingly, this factor must be weighed against the appellant.

The final and most important factor of the Barker v. Wingo test focuses on the resulting prejudice, if any, from such a delay. A defendant could be prejudiced by "(1) undue and oppressive incarceration; (2) anxiety accompanying public accusation; and (3) impairment of the ability to a fair defense." Id. at 532. In the instant case, it is clear the appellant was incarcerated in Michigan during the delay period. No undue incarceration or anxiety resulting from public accusation can occur when the defendant is already in prison. State v. Baker, 614 S.W.2d 352, 356 (Tenn. 1981). As such, the first two prejudice considerations are nullified.

We recognize it could be difficult in some circumstances for an accused to demonstrate specifically how delay has impaired his ability to defend himself. For that reason, a defendant is not necessarily required to affirmatively prove a particularized prejudice. Doggett v. United States, 505 U.S. 647, 655 (1992).

> [I]mpairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony 'can rarely be shown' . . . [E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, it is part of the mix of relevant facts, and its importance increased with the length of the delay.

Id. at 655-56.

The appellant argues the prejudice he suffered is manifested in his inability to develop his defense. Specifically, he claims the delay prevented him from developing an alibi defense due to lapses in memory of potential witnesses. Appellant also asserts that critical documents and evidence have been lost.

It does appear that audio tapes of the young victim's interviews are missing, along with

follow-up reports of statements made by the victim to Our Kids Clinic. However, transcripts of those original interviews, though unofficial, were available along with representatives of Our Kids Clinic and the victim, who testified at trial. In addition to the prejudice in his preparation for the jury trial, appellant contends he was also deprived of parole on multiple occasions because of the Tennessee detainer and lost the opportunity to serve any additional sentences concurrently with those he was serving in Michigan.

Although we understand that affirmative proof of particularized prejudice is not essential in every speedy trial claim and that the presumption that pretrial delay has prejudiced the accused intensifies over time, we believe that the facts in this case are distinguishable from those in Doggett. In Doggett the defendant was in no way responsible for the delay in his case. To the contrary, here the appellant made a deliberate decision to forego a speedy trial all the while hoping that Tennessee's interest in prosecuting him would diminish when they learned of his incarceration in Michigan.

In this case, the trial court did not specifically articulate each of the Barker v. Wingo factors.[1] However, our view of this record in light of those factors, permits us to conclude that the trial court properly dismissed the appellant's motion. As stated in Baker, *supra*, "here the failure to assert the right itself becomes evidence that another factor - - prejudice to the defendant - - either does not exist or is minimal." Baker, 614 S.W.2d at 356.

We conclude that the trial court did not abuse its discretion, and therefore did not err, in dismissing the appellant's motion. Accordingly, we affirm the decision of the trial court and, in turn, the appellant's conviction.

_____
J. S. DANIEL, SENIOR JUDGE

---

[1] The appellant included certain documents to his motion; however, he did not present any additional evidence at the motion hearing.