# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### August 14, 2007 Session

## STATE OF TENNESSEE v. ALONZO EUGENE TERRELL

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2005-B-1011     Mark J. Fishburn, Judge**

---

**No. M2006-01688-CCA-R3-CD - Filed January 30, 2008**

---

The defendant, Alonzo Eugene Terrell, was convicted of domestic assault, a Class A misdemeanor, and was sentenced to eleven months and twenty-nine days, to be served on probation. He filed a motion for new trial, which was denied, and this appeal followed. On appeal, he raises seven issues. First, he argues the evidence was insufficient to support a conviction of domestic assault. He also argues that the trial court erred in allowing the State to introduce certain evidence and erred in denying both his motion to dismiss for violation of his right to speedy trial and his motion for acquittal. Additionally, he contends the court erred in refusing to allow two specific lines of questioning to the victim and a police officer during the trial. Our review reveals that the evidence was sufficient to support the conviction and that no error exists. The judgment from the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

Mark H. Chen, Nashville, Tennessee, for the appellant, Alonzo Eugene Terrell.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Sarah Davis, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case involves a dispute between a husband and wife, stemming from an argument that occurred between them inside their home.

The defendant filed a motion to dismiss the underlying charges, alleging he was denied the right to a speedy trial. He filed the motion to dismiss on February 27, 2006, and a hearing was held on March 9, 2006. During the hearing, the defendant testified that he was arrested on December 17,

2004. He was not released until August 15, 2005. The defendant testified that the trial was originally set for October 31, 2005, but was moved to November 13, 2005. He said that it was also moved four additional times to March 27, 2006. The defendant said that he was prepared to go to trial on each of the proposed dates. He testified that the pending charges had adversely affected his life because they continued to hang over his head and prevented him from moving on with his life.

During cross-examination, the defendant acknowledged that he was on parole when he was arrested for the underlying offense. He was held until August because he was on parole for a previous violation and was incarcerated until he completed that sentence. He said that the court lowered his bond in July to enable him to make bond in August. He said he was not currently incarcerated because the jail accidentally released him after ten days. He did not post a second bond after violating the terms of his parole. He said he requested different counsel because his first attorney would not file for a speedy trial. The defendant claimed he did not know that new counsel would need time to prepare for his case. He said he was nervous while this case was pending because he was not guilty of the charges. He related that he was not nervous about a prior law violation when he was charged with second degree murder because he knew he was going to jail.

On redirect examination, the defendant testified that his parole was revoked because he failed to report to his parole officer. He said that, because his charges were misdemeanors, they could have been dealt with a long time ago. The defendant had been on parole for three months when he was arrested for the new law violation. The case was set several times for a settlement and was moved several times for motions to be filed.

The trial court found that all the continuances were due to other cases on the court's docket "which were either more serious, much more serious, or the person was in jail." The court acknowledged that the trial was held slightly more than one year from the date of the arrest. The court further found that the reasons for the delay were "neutral" toward the defendant and that none of the delays was the fault of the State. The defendant made no complaint about the delay until the month prior to trial, and he was not prejudiced or in jail as a result of the case pending.

During the trial, the victim testified that she and the defendant were married but were in the process of obtaining a divorce. The victim said that she returned home on the date of the incident and that the defendant made some comments about her cooking. She told him he needed to cook for himself because they had not gotten along the previous night. She said that the defendant talked to her as though he wanted to start an argument and asked questions about one of her female friends. The victim said that the defendant asked her where the friend lived, and she responded, "Why do you want to know where she lives, you don't even like her, so why would I tell you where she lives?" At that time, the defendant lunged at her and, using both of his hands, grabbed her by the throat. The defendant said, "Bitch, you gonna make me do it, you gonna make me do it." The victim believed that he meant that he would kill her. She could not breathe, and the defendant scratched her neck with his thumbnail. Hoping that the defendant would release his hold on her throat, the victim tried to give him the friend's number. The defendant released some of the pressure when he saw she was trying to give him the address. When the defendant released her, she ran to a neighbor's home. As

she ran, she heard the defendant say he was going to burn the house down and heard him slamming down the windows of the house.

As the victim ran to the neighbor's house, she heard the sound of fire alarms. Because the defendant had stated he would burn down the house, the victim immediately phoned her landlord, who then contacted the police. The victim was at the neighbor's house when the police arrived. She talked with the police, and the police photographed her injuries.

The victim testified that the defendant tried to contact her several times to discuss the case. He used their daughter to talk to her. The defendant phoned and sent text messages to the victim, specifically asking her to drop the charges. She felt that the defendant was trying to "weasel" his way out of getting in trouble again. He started to curse her when she refused to drop the charges. The victim said that the incident itself, as well as the text messages and calls she received from the defendant, caused her to be afraid of the defendant.

During cross-examination, the victim acknowledged that one of their daughters lives with the defendant. She said that the child was unruly and that she allowed her to live with her father. The victim said she ran to the neighbor's house because she thought it would be a safe place.

Officer Judy Barrera, of the Metro Nashville Police Department, testified that she responded to a domestic disturbance call on November 15, 2004. She said that, when she arrived, the victim appeared very shaken and was crying. The victim told her the defendant tried to strangle her and threatened to kill her and her children. The officer observed a scratch on the victim's throat that appeared to be a recent injury. Additionally, the officer testified that she smelled something burning in the home but did not know what it was. She said that she was unable to interview the defendant because he left the scene. She did not assist the victim in obtaining a warrant because she was going off duty when she responded to the call. However, she did file an offense report.

Officer Barrera said that the victim's name was misspelled on the offense report, specifically, one "n" is omitted from the victim's name. However, she did not recall whether the victim spelled out her name when she was compiling the report.

The defendant called his sister to testify. The defendant's sister testified that she had observed a rocky relationship between the defendant and the victim. She opined that the victim was not a truthful person and that she has been dishonest over the years.

Analysis

First, we review the defendant's challenge to the sufficiency of the evidence. He contends that the victim's testimony and the scratch on her neck were not sufficient to prove that he assaulted her. Specifically, he asserts that it is possible the victim had ulterior motives for charging him with assault and that, because her testimony was the only proof presented, there should be reasonable doubt that the assault occurred.

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003).

The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence. Id. In State v. Grace, the Tennessee Supreme Court stated that "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

An assault is committed when a person intentionally, knowingly, or recklessly causes bodily injury to another or when a person intentionally or knowingly causes another to reasonably fear imminent bodily injury. See Tenn. Code Ann. § 39-13-101. Domestic assault is defined as an assault against a person that is a family member. See Tenn. Code Ann. § 39-13-111. Here, the victim testified that the defendant lunged at her and grabbed her by the throat when she would not provide him the address for her friend. As he clutched her throat, he said, "Bitch, you gonna make me do it, you gonna make me do it." She described that he was pressing deep in her throat so that she could neither breathe nor talk until she tried to tell him the number. He then released pressure, and she was able to escape to a neighbor's house where she had the landlord phone the police. The evidence presented at trial was sufficient to prove the defendant assaulted the victim.

Next, the defendant argues that the trial court erred in allowing the State to admit into evidence messages that he sent to the victim urging her not to pursue the charge against him. In his brief, he provides no authority to support his contention that the text messages should not have been admitted though he contends they were irrelevant. In Tillery v. State, 565 S.W.2d 509, 511 (Tenn. Crim. App. 1978), this court held that "any attempt by an accused to conceal or destroy evidence, including an attempt to suppress the testimony of a witness, is relevant as a circumstance from which

guilt of the accused may be inferred." Here, the defendant does not dispute that the text messages were sent. Further, the trial court, during the hearing on the motion for new trial, held that the probative value of the messages outweighed any prejudicial effect. We agree. The defendant is entitled to no relief on this issue.

Next, the defendant argues that the trial court erred in allowing the police officer to testify when her involvement was limited to filing a police report based on the victim's assertions. The State argues that the defendant does not offer any authority to support his contention that it was error for the officer to testify; therefore, it is waived pursuant to Tennessee Court of Criminal Appeals Rule 10(b). However, we conclude that the trial court did not err in allowing the police officer to testify. The officer was the first to respond to the scene of the incident and filed an offense report based on her interview of the victim and her observations at the scene. She offered relevant testimony regarding her involvement in the investigation, and the trial court had no reason to prevent her testimony. This issue is without merit.

Next, the defendant argues that the trial court erred in failing to grant two motions. The first motion erroneously dismissed was his motion to dismiss for failure to provide him with a speedy trial, and the second was his motion for acquittal after the close of the State's proof.

Initially, we address the defendant's argument regarding his unsuccessful motion for acquittal. In his brief, he simply incorporates by reference the argument he submitted in contesting the sufficiency of the evidence. For the same reasons, we conclude that there was sufficient evidence to convict the defendant of domestic assault and that there was no error in denying the motion for acquittal. At the time the defendant made his motion for acquittal, the trial court properly denied the motion because the State had provided sufficient evidence to support their case. Therefore, this issue is without merit.

Next, we address the defendant's unsuccessful motion to dismiss for denying him his right to a speedy trial. Both the United States and Tennessee Constitutions guarantee a criminal defendant the right to a speedy trial. See U.S. Const. amend. VI; Tenn. Const. art. I, § 9; State v. Berry, 141 S.W.3d 549, 568 (Tenn. 2004); State v. Utley, 956 S.W.2d 489, 492 (Tenn. 1997). A criminal defendant's right to a speedy trial is also statutory in Tennessee. See Tenn. Code Ann. § 40-14-101 (2003).

In determining whether a defendant's right to a speedy trial has been compromised, we must weigh four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) any prejudice to the defendant caused by the delay. See Barker v. Wingo, 407 U.S. 514, 530, 92 S. Ct. 2182 (1972); State v. Wood, 924 S.W.2d 342, 346 (Tenn. 1996); State v. Baker, 614 S.W.2d 352, 353 (Tenn. 1981); State v. Bishop, 493 S.W.2d 81, 84 (Tenn. 1973).

Here, the defendant was arrested on December 17, 2004. He admitted that he was on parole at the time of this arrest and had to serve time for violating his parole. He was released on August

15, 2005, when he made bond in this case. He failed a drug test and served ten days for violating the conditions of his bond. The defendant testified that the case was set for trial on October 31, 2005, before it was continued to November 13, 2005. The case was later continued to March 2006. The defendant did acknowledge that he changed attorneys while the case was pending. The trial court found no fault with the State for the case being continued and stated that the court's calendar pushed it over the one-year date. The court further found that the defendant was not in jail because he could not make bond for the underlying arrest but was incarcerated because he violated his parole. There is no evidence that the delay was unreasonable or caused the defendant any real prejudice. The length of the delay was not unreasonable, neither party was responsible for the delay, and the defendant did not assert his right to a speedy trial until days before his trial was scheduled to begin. We conclude that the defendant's right to a speedy trial was not violated and, therefore, affirm the judgment from the trial court.

Next, the defendant contends that the trial court erred in preventing him from pursuing certain issues on cross-examination of two State witnesses. Specifically, he argues that he was not allowed to cross-examine the victim regarding her criminal history and was not allowed to cross-examine the police officer regarding the name given by the victim. However, he fails to cite to any authority to support either issue. Therefore, these issues are waived pursuant to Tennessee Court of Criminal Appeals Rule 10(b).

## Conclusion

Based on the foregoing and the record as a whole, we conclude that no error exists and that the judgment from the trial court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE