**UNITED STATES of America, Plaintiff,**

v.

**Kirk L. SHELTON, Defendant.**

**No. 90–00140–01–CR–W–3.**

United States District Court, W.D. Missouri, W.D.

Nov. 23, 1992.

Gregory W. Vleisides, Catherine A. Donnelly, Vleisides, Donnelly, O'Leary & Sousley, P.C., Kansas City, MO, for defendant.

William L. Meiners, U.S. Atty's Office, Kansas City, MO, for U.S.

## ORDER

ELMO B. HUNTER, Senior District Judge.

### PROCEDURAL BACKGROUND

On June 21, 1990, the defendant, Kirk L. Shelton, was indicted in a two-count indictment. Count One alleged that the defendant, on or about July 5, 1989, distributed 5 grams or more of crack cocaine. Count Two alleged that, on or about July 18, 1989, the defendant distributed 50 or more grams of crack cocaine. Shelton is the only defendant named in the indictment. Pursuant to the government's request, the indictment was ordered sealed by the Magistrate on June 21, 1990. Also pursuant to the government's request, on June 21, 1990, an Order was entered directing that a warrant of arrest be issued. In response to the Order for an arrest warrant, the Clerk of the Court issued the warrant that same day and the warrant was forwarded to the office of the United States Marshal for the Western District of Missouri.

Prompted by an inquiry from the Magistrate regarding the status of old sealed indictments in which no arrest had been made,

the government filed a "Motion to Unseal Arrest Warrant" on August 19, 1992. The Magistrate entered his "Order to Unseal Arrest Warrant" on that same day, August 19, 1992. The defendant was arrested shortly thereafter on August 27, 1992.[1]

The defendant filed a motion to dismiss the indictment on September 25, 1992. The defendant's motion asserts that the two-year delay between the filing of the indictment and his arrest violated his Sixth Amendment right to a speedy trial. The government's opposition stated that Shelton's motion to dismiss must fail because he has not shown the government deliberately delayed his arrest to gain a tactical advantage and that Shelton had failed to show he had been prejudiced by the delay.

On October 2, 1992, the Magistrate conducted an evidentiary hearing on the motion to dismiss. The only evidence received at that hearing was the testimony of the defendant. In the Magistrate's Report and Recommendation issued October 14, 1992, the Magistrate recommended denial of the motion to dismiss due to: (1) the defendant's failure to demonstrate actual prejudice; and (2) the defendant's failure to show that the government intentionally delayed to gain a tactical advantage.

On October 23, 1992, the defendant filed objections to the Magistrate's Report and Recommendation. The defendant objects to the law applied by the Magistrate and his finding of no prejudice resulting from the delay. The government's response to the objections takes the position that the defendant must show actual prejudice as well as an intentional delay by the government to gain a tactical advantage.

An evidentiary hearing was held by this Court on November 19, 1992, to assist the Court in making its *de novo* determination of the defendant's motion to dismiss, as is provided for in 28 U.S.C. § 636(b)(1)(B) and (b)(1)(C) and our Order of Reference of August 31, 1992.

## FINDINGS OF FACT

Based upon the evidence received at the November 19, 1992, hearing, the Court makes the following findings of fact:

1. The defendant is currently twenty-eight years old and resides at 2539 Park, Kansas City, Missouri. In July of 1989, the defendant resided at 3919 Flora, Kansas City, Missouri, and had lived at that address up until the time of his arrest.

2. The house at 3919 Flora was owned by the defendant's grandmother at the time he lived there in 1989. The defendant was born and raised for a substantial number of years at the house on Flora. The defendant is a lifelong resident of the Kansas City area and has always lived near to the house on Flora. The defendant attended grade school at the neighborhood school that serviced the area of the house on Flora.

3. The defendant owned a "reddish" Suzuki Samarai in July of 1989. The defendant has particular reason to remember that vehicle since it was repossessed, which resulted in litigation over a note the vehicle secured.

4. From 1989 until 1992, the defendant has never used an alias. During that period, he has held a driver's license, had a phone listed in his own name, applied for and received a commercial driver's license, and filed income tax returns. The defendant has not secreted himself from law enforcement authorities. Government counsel concedes that the defendant could have been easily located from June 1989 until August 1992.

5. The defendant cannot recall his exact whereabouts on July 5, 1989, and July

---

1. While the parties agree that Shelton was arrested on August 27, 1992, the original warrant for arrest in the Court's file shows that the warrant was executed on June 27, 1992. Testimony by the government's only witness, an employee of the Marshal's office, indicated that the June 27, 1992, date was a mistake. We accept the August 27, 1992, date as the date defendant was arrested. The Court also notes that the original warrant on file with the Clerk was not signed by the arresting officer.

18, 1989. The defendant did not keep a calendar or diary during July of 1989, which would assist him in remembering the events of those dates. The defendant has been unable to locate alibi witnesses. The defendant first became aware of the charges against him on August 27, 1992. The defendant is unable to assist counsel in his own defense.

6. An arrest warrant was issued for the defendant's arrest by the Clerk of the Court on June 21, 1990. The arrest warrant and a copy of the indictment were received by the office of the United States Marshal, Western District of Missouri, on June 21, 1990. The Marshal's service did not attempt to execute the warrant. The defendant's name was known to the Marshal's service. The Kansas City Missouri Police Department, the agency that originally sought the indictment and warrant, did not contact the Marshal's office to follow-up on and attempt execution of the warrant. No attempt was made to apprehend the defendant until August 27, 1992.

7. The Marshal's office does not monitor when arrest warrants issued pursuant to sealed indictments are executed. The government made no showing of why the warrant was not executed until August 1992, other than testimony that the warrant was not entered into the "NCIC" computer.

## DISCUSSION

### 1. The Law to be Applied

■ The government's position, that the defendant in this case must show actual prejudice and intentional delay by the government to gain a tactical advantage, is mistaken. All of the cases cited by the government in support of its position deal exclusively with *pre-indictment* delay. *See e.g. United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977) (prosecution following a 17 month investigative delay in bringing indictment did not deprive defendant of due process even if his defense might have been

somewhat prejudiced). A claim of pre-indictment delay is necessarily a claim under the Due Process clause of the Fifth Amendment since the Sixth Amendment right to a speedy trial has no application until the putative defendant has in some way become the accused. *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *United States v. Washington*, 504 F.2d 346 (8th Cir.1974). The pre-indictment delay cases justify the intentional delay and actual prejudice test on several different policy grounds. For instance, the Courts cannot impose a duty on the prosecutor to file charges as soon as probable cause exists but must leave it to the prosecutor's discretion to file when he feels confident that the charges can be proved beyond a reasonable doubt. *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). Because of the differing concerns, the law applicable to pre-indictment/due process claims cannot be applied to Shelton's Sixth Amendment speedy trial claim.

■ The Sixth Amendment right to a speedy trial protects against undue and oppressive pretrial incarceration, minimizes the anxiety and concern that accompanies public accusation, and the danger that the passage of time, by itself, will damage the defendant's ability to counter the government's charges. *Dickey v. Florida*, 398 U.S. 30, 41–42, 90 S.Ct. 1564, 1571–72, 26 L.Ed.2d 26 (1970). It is the duty of a charging authority to provide a prompt trial. *Id.* at 38, 90 S.Ct. at 1569. Because he was charged in a sealed indictment and remained free from custody during the two years the government failed to take any steps to apprehend him, the first and second protected interests were not implicated until August 1992 when the government's accusations became public. The defendant's position in this case is that the United States Attorney's office, the charging authority, has failed to provide him a prompt trial and, thereby, damaged his ability to counter the charges made in the indictment.

In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Court set the criteria with which to judge claims of a violation of the Constitutional right to a speedy trial. The Court adopted an ad hoc

balancing test approach to speedy trial cases. *Id.* at 530, 92 S.Ct. at 2192. The rule was meant to place the primary burden on the courts and the prosecutors to assure that cases are brought to trial. In this case, with the indictment sealed, the burden to bring Shelton's case to trial rested squarely with the United States Attorney's Office.

The *Wingo* Court identified four factors to be used in assessing whether a particular defendant has been deprived of his right to a speedy trial. Those factors are: (1) length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. The *Wingo* test was recently applied in the Sixth Amendment speedy trial violation case of *Doggett v. United States,* —— U.S. ——, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). *See also Dickey v. Florida,* 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970) (pre-*Wingo* authority for balancing test to determine reasonableness of pre-arrest delay where Supreme Court overturned state court conviction where no valid reason existed for the delay). In determining Shelton's motion to dismiss, which claims a deprivation of his Sixth Amendment right to a speedy trial, this Court will apply the *Wingo* balancing test.

### 2. Application of Barker V. Wingo

The *Wingo* balancing test compels us to approach speedy trial cases on an ad hoc basis. The first factor, length of delay, is referred to as a "triggering mechanism." Until there has been some prejudicial delay, the other factors need not be considered. The length of the delay that will prompt further inquiry, however, depends upon the peculiar circumstances of each case. *Wingo,* 407 U.S. at 530, 92 S.Ct. at 2192. For example, the Court stated "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id.* at 530–31, 92 S.Ct. at 2192. Depending on the nature of the charges, the lower courts have generally found post-accusation delay "presumptively prejudicial" at least as it approaches one year. *Doggett v. United States,* —— U.S. ——, 112 S.Ct. 2686, 120 L.Ed.2d 520 n. 1 (1992).

In this case, Shelton is charged with two counts of distribution of crack cocaine in hand-to-hand transactions with an undercover police officer. The sales were made in July of 1989. The indictment was returned and an arrest warrant issued on June 21, 1990. The defendant was arrested and first became aware of the charges in late August 1992. Overall, there has been a three-year delay in bringing this case to Court. Two years of that delay are post-indictment and, therefore, relevant to Shelton's speedy trial claim. There are no co-defendants in the indictment and no conspiracy charges. Sadly, in today's drug scene, Shelton's crimes could be considered "ordinary street crime." The two-year delay in this case is sufficient to "trigger" our consideration of the other *Wingo* factors.

Closely related to length of delay is the reason the government assigns to justify the delay. *Wingo,* 407 U.S. at 530–32, 92 S.Ct. at 2192–93, 33 L.Ed.2d at 117. Deliberate attempts to delay weigh heavily against the government. More neutral reasons, such as negligence, are weighed less heavily against the government but, nevertheless, are considered since the ultimate responsibility for such circumstances rests with the government. *Id.*

In this case, the government contends that the reason that the arrest was delayed is that when the indictment was sealed, pursuant to its request, "unfortunately, the arrest warrant was also sealed at this time." *See* Govt. Response to Defendant's Objections to Magistrate's Report and Recommendation, at p. 1. In their motion to unseal the arrest warrant, the government claimed that the warrant had been sealed, "prohibiting its dissemination through law enforcement authorities." In effect, the government is saying that this Court's procedures for filing indictments that are being kept secret per the government's request caused the delay in arresting the defendant. This is not the case.

Records in the Clerk's Office indicate that an arrest warrant was issued on June 21, 1990, and delivered to the United States Marshal that same day. Furthermore, the evidence adduced by the government at the hearing on the motion to dismiss shows the

United States Marshal's Service received the warrant on June 21, 1990. The government did not, and presumably could not, produce evidence that any attempt was made to apprehend the defendant during the two year period of time between indictment and the Magistrate's inquiry regarding old sealed indictments.

The government did put on evidence that the warrant was not listed in the "NCIC" computer system, which is a nationwide computer network used by law enforcement agencies to check a person's background for their record of arrest and to see if there are any outstanding warrants for that person's arrest. The government did not put on any evidence why the warrant, which was delivered to the United States Marshal, was not executed. Instead, the government merely put on evidence that it is the custom of the Marshal's office to leave it up to the agency in charge of the investigation to follow-up and make the arrest. In this case, there was no follow-up. Furthermore, the government's evidence showed that when there is no follow-up by the "responsible agency," the Marshal's service takes no action on its own. The government put on no evidence of what procedures the United States Attorney's office utilizes to make sure they fulfill their duty to bring a case to trial as expeditiously as possible.

In essence, the government failed to make a showing that the delay in this case was reasonable. There was no ongoing investigation, no co-defendants, and no indication that the defendant was about to go into hiding. At a minimum, the government's pursuit of this prosecution was negligent. As the Magistrate states in his Report and Recommendation:

It seems that the lesson to be learned from this experience is that the government should take more care in deciding which indictments it wants sealed and, once an indictment is sealed at the government's request, the government should closely monitor the case and make determinations, on a continuing basis, of whether sealing the indictment and accompanying documents is helping or hindering the arrest of the defendant.

The third factor, the defendant's assertion of his right, is clearly in Shelton's favor. Because the indictment was sealed, Shelton had no opportunity to raise his speedy trial claim before he was arrested and made aware of the charges. By filing the motion to dismiss based on the pre-arrest delay, the defendant has properly and timely asserted his right.

The fourth factor is the prejudice to the defendant. Of the various interests that are potentially implicated by a failure to receive a speedy trial, the possibility that the defense will be impaired, was identified in *Wingo,* 407 U.S. at 532–33, 92 S.Ct. at 2193, 33 L.Ed.2d at 118, as the most serious. The Court recognized the potential for prejudice if defense witnesses are unable to recall events of the distant past. The Court also acknowledged that loss of memory is not always reflected in the record because "what has been forgotten can rarely be shown." *Id.*

The government takes the position that because the defendant can remember where he lived and what kind of car he drove in July of 1989, which is the time he was allegedly selling drugs, Shelton has failed to show actual prejudice. The defendant counters by saying that he had particular reasons to remember where he lived and what car he drove in July of 1989 and that remembering such facts does not mean he can account for his whereabouts or identify possible alibi witnesses for the specific dates in the indictment. Shelton remembers the house because it was owned by his grandmother and remembers the car he was driving because it was later repossessed. Furthermore, the government's analysis was undertaken pursuant to the stricter affirmative showing of "actual prejudice" applicable to Fifth Amendment Due Process claims for pre-indictment delay.

The need to show actual prejudice was recently before the Supreme Court in *Doggett v. United States,* —— U.S. ——, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). In *Doggett,* the Court reversed the Eleventh Circuit and held the defendant need not prove actual prejudice in light of the government's eight and one-half year delay between Doggett's indictment and arrest, which was attributed

to negligence, and that the defendant may not need to show any prejudice at all in particular instances. In *Doggett,* six of the eight and one-half year delay was attributed to negligence on the part of the government. *Doggett,* —— U.S. at ——, 112 S.Ct. at 2694, 120 L.Ed.2d at 532. This six year negligent delay was held to be "six times as long as that generally sufficient to trigger judicial review." The Court went on to state "when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, . . . nor persuasively rebutted, the defendant is entitled to relief." *Id.* (footnotes omitted).

Essentially, the Court in *Doggett* set up a separate balancing test to assess the prejudice factor where the government has been negligent. "[N]egligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice." *Id.* The delay in this case was twice as long as that generally sufficient to trigger review. The defendant has come forward and supported the presumption of prejudice that accompanies such a delay through his testimony. Furthermore, the government's attempt to persuasively rebut that showing was unconvincing. The Court finds, therefore, that the defendant's defense has been prejudiced by the delay caused by the government's negligence.

The *Doggett* position on how much prejudice a defendant must show to make out a successful claim that his speedy trial right has been violated, exemplifies the Court's position in *Wingo* that none of the four factors alone is either necessary or sufficient to find a deprivation of the right to a speedy trial. "Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Wingo,* 407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118.

### CONCLUSION

When the *Wingo* factors are considered together with the relevant circumstances, it is this Court's conclusion that the indictment in this case must be dismissed. The government's two-year unjustified delay was challenged by the defendant in a timely manner, and prejudiced his ability to defend himself from the charges, therefore, dismissal is necessary as the only remedy available for the government's violation of Shelton's Sixth Amendment Right to a speedy trial.

Accordingly, it is hereby ORDERED that:

(1) the defendant's motion to dismiss the indictment is GRANTED.