IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
August 4, 2021 Session

**STATE OF TENNESSEE v. DAVID HERL**

**Appeal from the Circuit Court for Madison County**
**No. 12-27     Donald H. Allen, Judge**

————————————————————

**No. W2020-01671-CCA-R3-CD**

————————————————————

In 2012, the Defendant, David Herl, entered a guilty plea to theft of property valued over $1,000, and he received a sentence of four years, suspended to probation. On July 2, 2013, a warrant was issued, alleging that the Defendant violated the terms of his probation. The warrant was not served on the Defendant until September 18, 2020. The Defendant moved to dismiss the prosecution, asserting that his right to a speedy trial had been violated. The trial court refused to dismiss the proceedings, found the Defendant to have violated the terms of his probation, and ordered the Defendant to serve his sentence in confinement. The Defendant appeals the trial court's refusal to dismiss the charges. We conclude that the Defendant's right to a speedy trial was not violated and affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and TIMOTHY L. EASTER, JJ., joined.

Brennan M. Wingerter (on appeal), Assistant Public Defender – Appellate Division; George Morton Googe (at hearing), Public Defender; and Gregory D. Gookin (at hearing), Assistant Public Defender, for the appellant, David Herl.

Herbert H. Slatery III, Attorney General and Reporter; Samantha L. Simpson, Assistant Attorney General; Jody Pickens, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL AND PROCEDURAL HISTORY

The Defendant and a co-defendant were indicted for having stolen property worth $1,000 or more from a department store, and on February 21, 2012, the Defendant entered a guilty plea which specified that he would receive a four-year sentence which was to be suspended after the time he had already served. The plea petition showed that his probation was to be "supervised by state probation (may be transferred to Mississippi)," and the order likewise specified, "May be transferred to Mississippi." The Defendant was required to perform community service, obtain a drug and alcohol assessment within thirty days of his release, maintain employment, submit to monthly drug screens, and pay court costs at the rate of $100 per month. The address listed on the petition to enter a plea was located in Booneville, Mississippi.

On April 24, 2012, the trial judge signed a probation violation warrant, which alleged numerous violations of the terms of the Defendant's probation. According to the probation violation report, the Defendant was "allowed to transfer his probation to Mississippi" on March 1, 2012, but on April 2, 2012, his transfer was denied. The Defendant's probation officer alleged that the Defendant had not contacted her, that he had not responded to letters instructing him to contact her, that the "phone numbers for him are not working," and that she was unable to locate him. The Defendant's address was listed as the Mississippi address given in his plea petition. A revocation order shows that in July 2012, the Defendant waived a hearing and acknowledged that he violated his probation by failing to provide proof of employment, notify his probation officer of his address, contact his officer, seek his drug assessment, or perform community service. The Defendant's probation was revoked and reinstated, and the order noted, "Probation to be transferred to Mississippi."

Shortly thereafter, a second probation violation report was filed. This report listed the Defendant's address as located in Tupelo, Mississippi. According to the narrative, after the Defendant's probation was reinstated, he was given permission to travel to Mississippi so long as he returned to Tennessee by July 27, 2012. The narrative recited that the Defendant was arrested in Mississippi prior to that date and held in jail until August "on old charges." The Defendant did not report the arrest, and the Defendant's probation officer was unable to locate or contact him at the time of the report. This violation warrant was dismissed when the trial court concluded that the Defendant had not violated the terms of his probation.

On July 2, 2013, the trial judge signed the probation violation warrant at issue in this appeal. This warrant alleged that the Defendant had violated probation by failing to

inform his probation officer of his address, failing to report for drug screens, and failing to pay court costs or perform community service. The warrant stated that the Defendant's probation officer had called the telephone numbers listed in the file without success and that when she called the Defendant's place of employment, she was told the Defendant no longer worked there. According to the warrant, the Defendant had last reported on February 25, 2013, and his probation officer was unable to locate him. The warrant listed an address in Jackson, Tennessee. A notation on the warrant reflected that on November 25, 2015, an unrelated individual lived at that address.

The July 2013 warrant was not served on the Defendant until September 18, 2020. The Defendant promptly moved to dismiss the probation violation warrant, asserting that the warrant was pending for over seven years before it was served on him and that the delay violated his right to a speedy trial. The motion alleged that the Defendant had been incarcerated in Mississippi "on other occasions … since July 2, 2013," and that the State had failed to place a detainer on him.

At the revocation hearing, the Defendant testified that he was from Mississippi and that he was placed on probation for his Tennessee offense. He agreed that "the plan [was] to try to transfer [his] supervision down to Mississippi" and stated that he was "vague on" the terms but that "there was an interstate compact." While he was in Mississippi, he was arrested on "several occasions." The Defendant stated he was in the custody of the Mississippi Department of Correction in 2015. He was incarcerated in Mississippi on other occasions, including a 2016 arrest in Lee County, a 2017 arrest in Desoto County, and a 2018 arrest in Lee County. Between 2013 and 2019, each time the Defendant was released from custody, a check was run to see if he had any outstanding warrants. All of these checks came back negative, and he was released from custody numerous times. Because he had no indication that he had a warrant for his arrest from Madison County, Tennessee, he concluded that the Tennessee case "was just over with." He was arrested in 2020 in Desoto County, Mississippi, and he was subsequently held on the warrant out of Madison County, Tennessee.

The Defendant agreed that he "just stopped reporting to probation back in 2013." When asked if he ever "called back up here" or made contact regarding the probation case, the Defendant stated, "Well, at the point I was homeless at that time, and I had gotten arrested." He agreed that he did not attempt to report the arrest to his Tennessee probation officer when he was released from jail but stated that he "was going by [his] Mississippi parole" and that it "never crossed [his] mind." He stated that at one time "when the interstate compact had done, I did report to Iuka, Mississippi in Corinth." The court noted that "the officer says in the report that the transfer was denied," and the Defendant responded that he was unaware of the denial. He agreed with the court that he absconded and stopped reporting to his probation officer.

The trial court denied the motion to dismiss the revocation warrant. The court found that the Defendant initially violated his probation in 2012 and was told to continue to report to his probation officer. The court found that in 2013, the Defendant "just abscond[ed] from probation," having left the State without permission. The court stated that it would not attribute to the State of Tennessee the failure of Mississippi officials to detain the Defendant. It found that the Defendant had violated the terms of his probation and revoked the Defendant's probation, sentencing him to confinement. The Defendant appeals, asserting that his right to a speedy trial was violated.

## ANALYSIS

The United States and Tennessee Constitutions provide for the right to a speedy trial in a criminal prosecution. U.S. Const. amend. VI; Tenn. Const. art. I, § 9; *see also* T.C.A. § 40-35-311(b) (providing for a determination of whether probation was violated "at the earliest practicable time"). This right is intended "to protect the accused from oppressive pre-trial incarceration, the anxiety and concern due to unresolved criminal charges, and the risk that the accused's defense will be impaired by dimming memories or lost evidence." *State v. Simmons*, 54 S.W.3d 755, 758 (Tenn. 2001) (citing *Doggett v. United States*, 505 U.S. 647, 654 (1992)). The trial court's determination regarding a violation of the right to a speedy trial is a mixed question of fact and law reviewed de novo. *State v. Rickey E. Hutchings*, No. M2008-00814-CCA-R3-CD, 2009 WL 1676057, at *5 (Tenn. Crim. App. June 16, 2009). A trial court's factual findings underlying its determinations are generally binding on an appellate court unless the record preponderates otherwise. *Kendrick v. State*, 454 S.W.3d 450, 479 (Tenn. 2015). When the accused has been denied the right to a speedy trial, the appropriate remedy is reversal and dismissal of the charge. *Simmons*, 54 S.W.3d at 759. "A trial court must carefully balance societal interest in punishing criminals against a defendant's interest in a speedy trial, because dismissal of charges is the only available remedy for violation of the right." *Rickey E. Hutchings*, 2009 WL 1676057, at *4 (citing *State v. Bishop*, 493 S.W.2d 81, 83 (Tenn. 1973)).

A probation revocation proceeding is a criminal prosecution triggering the right to a speedy trial. *Allen v. State*, 505 S.W.2d 715, 719 (Tenn. 1974); *Rickey E. Hutchings*, 2009 WL 1676057, at *4. In evaluating a claim that the accused was denied the right to a speedy trial, this court considers the following four-factor balancing test: "1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) the prejudice suffered by the defendant from the delay." *Simmons*, 54 S.W.3d at 759 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). The court must evaluate, on a case-by-case basis, whether the circumstances indicate that the accused was deprived of the right to a speedy trial. *Id.* at 762. Accordingly, we turn to the relevant factors.

## A. Length of Delay

The length of the delay is a threshold inquiry, and unless there has been a delay which is presumptively prejudicial, evaluating the delay in the context of the nature and complexity of the case, the other factors need not be considered. *Id.* at 759. A delay approaching one year will generally trigger a speedy trial analysis. *Id.* In this case, the State concedes that the seven-year delay in prosecuting a simple probation violation passes this threshold inquiry.

## B. Reason for Delay

We turn to the reason that the Defendant's prosecution was delayed. Delay general may be categorized as:

> (1) intentional delay to gain a tactical advantage over the defense or delay designed to harass the defendant; (2) bureaucratic indifference or negligence; (3) delay necessary to the fair and effective prosecution of the case; and (4) delay caused, or acquiesced in, by the defense.

*State v. Wood*, 924 S.W.2d 342, 346-47 (Tenn. 1996) (footnotes omitted). A court's tolerance for negligent delay is inversely proportional to the length of the delay. *Simmons*, 54 S.W.3d at 760.

The Defendant asserts that the delay in this case is attributable to bureaucratic indifference or negligence, while the State asserts that the delay was caused by the Defendant's absconding and the State's inability to locate the Defendant. In arguing that this factor weighs against the State, the Defendant cites to *Rickey E. Hutchings*, in which this court concluded that the inordinate delay in failing to prosecute a probation violation for nine years weighed heavily against the State. 2009 WL 1676057, at *7. In *Rickey E. Hutchings*, the State was aware of the defendant's whereabouts when he was incarcerated in a federal prison and later was put on probation in a Tennessee county, but it took no action to prosecute the probation violation. *Id.* at *7 (the State was aware of the defendant's location while he was in federal prison and on probation, and the defendant had contacted authorities in Tennessee upon his release from federal custody in Mississippi). This court ultimately concluded that the defendant's right to a speedy trial had been violated. *Id.* at *9. Likewise, the Tennessee Supreme Court in *State v. Wood* concluded that the State was grossly negligent in not prosecuting the defendant for thirteen years when it was aware that he was incarcerated in Alabama and when the defendant contacted the county clerk regarding the detainer but the State still took no action. 924 S.W.2d at 347 (concluding ultimately that the defendant was not denied his right to a speedy trial on a murder charge and noting that the presumption of any

prejudice was greatly weakened by the defendant's acquiescence in the delay). We note that these cases are distinguishable because in both of these cases, there was evidence that the State was aware of the defendant's location and simply chose not to take further action to prosecute the revocation proceeding. *See Rickey E. Hutchings*, 2009 WL 1676057, at \*7; *Wood*, 924 S.W.2d at 343-44; *see also Blackwell*, 546 S.W.2d at 831 (distinguishing *Allen* , 505 S.W. 2d at 716, where the charges were dismissed due to a violation of the defendant's right to a speedy trial on a revocation, by noting that the defendant in *Allen* was incarcerated within the state rather than out of the state).

The State argues that any delay was attributable to the Defendant's misconduct and that this factor weighs against granting relief. In *Blackwell v. State*, this court held that there was no violation of the right to a speedy trial when a probation violation was not tried for approximately one year, concluding that "the delay in the present case was brought about by the appellant's own misconduct that resulted in his incarceration" in another state, where he was "not readily accessible" to Tennessee authorities. 546 S.W.2d 828, 830 (Tenn. Crim. App. 1976). Similarly, in *State v. Randy R. Wilson*, this court concluded that a seven-year delay between issuance of a capias and the defendant's arrest did not violate his right to a speedy trial. No. M2000-01537-CCA-R3-CD, 2001 WL 523368, at \*2 (Tenn. Crim. App. May 16, 2001). In *Randy R. Wilson*, the State was aware during the pendency of the revocation warrant that the defendant was incarcerated out of the state because the North Carolina prison advised his probation officer of his whereabouts. *Id.* at \*1. This court nevertheless concluded that the defendant had offered no proof that he was accessible to the State of Tennessee while incarcerated and that the delay was accordingly attributable to his own misconduct because "the State could not obtain jurisdiction upon the defendant until he was released from North Carolina, and he was not available for the revocation hearing until that time." *Id.* at \*2. Likewise, in *State v. Mathis Lamar Meadows*, this court rejected the defendant's claim that his right to a speedy trial was violated when there was a five-year delay between the issuance and service of the probation revocation warrants, reasoning that the defendant caused the delay by being incarcerated out of the state. No. W2006-02534-CCA-R3-CD, 2007 WL 1215050, at \*3 (Tenn. Crim. App. Apr. 24, 2007).

In this case, the seven-year delay occurred when the Defendant stopped reporting for probation in Tennessee. During some of this time, he was incarcerated in Mississippi. The Defendant argues that *Blackwell* and *Randy R. Wilson* can be distinguished because the defendants in those cases were continuously incarcerated and therefore unavailable for proceedings in Tennessee and also because the State of Tennessee took steps to detain them once they were released from that confinement. The Defendant argues that every time he was released from jail, he became available to Tennessee, and he asserts that the warrants division of the Madison County Sheriff's Office presumably did not pursue the warrant. In *State v. Gregory L. Moody*, a probation violation was pending for fourteen

years, during which the defendant absconded, was imprisoned multiple times in North Carolina, provided Tennessee with notice of his location, and absconded once from Tennessee's custody prior to the hearing. No. W2016-00425-CCA-R3-CD, 2016 WL 4973478, at *1-2 (Tenn. Crim. App. Sept. 15, 2016). The defendant in *Gregory L. Moody* was also at one point simply released from the custody of North Carolina while the warrant was pending, as the Defendant here claims he was released from Mississippi custody. *Id.* at *2-3. This court concluded in *Gregory L. Moody* that the delay in prosecution was attributable to the defendant's repeated criminal misconduct. *Id.* at *3. Accordingly, we do not believe that periodic nature of the Defendant's out-of-state incarceration is dispositive of this factor.

The Defendant here offered no evidence at the hearing that the State of Tennessee knew his whereabouts and no evidence that he was accessible to the State for service of the warrant. The only evidence regarding the duration or timing of his incarceration was the Defendant's testimony that he was first incarcerated in 2015 – two years after absconding – and then again in 2016, 2017, and 2018. There is quite simply an absence of proof showing that he was available to the State of Tennessee. Instead, the record establishes that the Defendant's probation officer, in 2013, attempted to locate him through the telephone numbers in the file and through his place of employment. The probation officer was unable to determine the Defendant's whereabouts. The Defendant agreed at the hearing that he had absconded from probation in 2013. We conclude that this case is more similar to *Blackwell* and *Randy R. Wilson* because the Defendant presented no evidence at the hearing that the State could have obtained the Defendant's presence and simply chose to forgo it. *See Blackwell*, 546 S.W.2d at 831 (noting that the defendant was not available to Tennessee); *Randy R. Wilson*, 2001 WL 523368, at *2 (denying relief where the defendant "offered no proof that he was 'readily accessible'" to the State when he was incarcerated in North Carolina). While the Defendant urges us to assume that the State was negligent in pursuing the warrant because he was released from jail multiple times, there is simply nothing in the record from which we can draw any conclusions about the circumstances surrounding the Defendant's purported releases from jail in Mississippi. *See Randy R. Wilson*, 2001 WL 523368, at *2 (citing *State v. Warren,* 740 S.W.2d 427, 427 (Tenn. Crim. App. 1986) for the proposition that the Interstate Compact on Detainers does not generally apply to probation revocation). We conclude that the record as a whole demonstrates that the delay is mainly attributable to the Defendant's own misconduct in absconding. This factor weighs against the Defendant.

### C. Assertion of the Right to a Speedy Trial

The Defendant asserted his right to a speedy trial approximately one month after he was served with the warrant informing him that the State of Tennessee intended to

prosecute him for violating his probation. The parties agree that the Defendant's assertion of his right to a speedy trial was timely. *See Simmons*, 54 S.W.3d at 760 ("[A]n accused who is unaware of pending charges because the indictment has been sealed or not served cannot be penalized for failure to assert the speedy trial right."). This factor weighs in favor of the Defendant.

### D. Prejudice

Prejudice is the "most important" factor in the speedy trial violation inquiry. *Id.* at 760. "Courts do not necessarily require a defendant to affirmatively prove particularized prejudice." *Id.* This is because of the difficulty of proving prejudice:

> "[I]mpairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony 'can rarely be shown.' ... [E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, it is part of the mix of relevant facts, and its importance increases with the length of the delay."

*Wood*, 924 S.W.2d at 348 (quoting *Doggett*, 505 U.S. at 655 (citations omitted)). In evaluating prejudice, this court keeps in mind the interests guarded by the right to a speedy trial: (1) preventing undue and oppressive pretrial incarceration; (2) minimizing anxiety and concern accompanying public accusation; and (3) limiting the possibility that long delay will hamper the defense. *Simmons*, 54 S.W.3d at 760 (citing *Bishop*, 493 S.W.2d at 85).

The Defendant was not incarcerated on the probation revocation warrant awaiting a determination regarding revocation. At the hearing, he testified that he assumed he would not be prosecuted on the probation violation, so the anxiety and concern accompanying a pending charge were not present in this case. The Defendant has not articulated any particular manner in which the delay hampered his ability to defend against the allegations in the probation violation warrant. He admitted at the hearing that he had absconded in 2013. He acknowledges that he can point to no particular prejudice, but argues that the length of the delay makes it presumptively prejudicial, citing *Allen* and *Rickey E. Hutchings*. However, in *Allen*, the court had not yet adopted the *Barker* factors or applied the factors relevant to prejudice articulated in *Bishop* but simply concluded that the delay was prejudicial, and in *Rickey E. Hutchings*, the defendant made particularized allegations of prejudice regarding the service of his other convictions and

health problems he had developed in the interim. *See Allen*, 505 S.W.2d at 719; *Rickey E. Hutchings*, 2009 WL 1676057, at *9.

While we agree that seven years is a lengthy time for the pendency of a probation violation, the Defendant has not articulated any prejudice under the factors cited in *Simmons* and *Bishop*. *Simmons*, 54 S.W.3d at 760 (citing *Bishop*, 493 S.W.2d at 85). We note that in *Wood*, the Tennessee Supreme Court observed that the presumption of prejudice was somewhat weakened by the defendant's acquiescence in the delay, which was prompted by his "hoping … that the Tennessee charges would die of neglect." 924 S.W.2d at 348 (concluding, based on the defendant's acquiescence in delay and the absence of a showing of prejudice, that the defendant was not deprived of a speedy trial when the State was aware of his incarceration in Alabama but delayed prosecution for thirteen years); *see Blackwell*, 546 S.W.2d at 830 (concluding there was no prejudice when the defendant readily admitted the probation violation and could not show other prejudice). Because the Defendant has not articulated prejudice, this factor weighs against the Defendant.

Weighing the four factors, we conclude the Defendant was not denied his right to a speedy trial. The only proof presented at the hearing tended to establish that the delay in prosecution was the result of the Defendant's absconding. The Defendant presented no proof that the State delayed prosecution through negligence or bureaucratic indifference. Furthermore, he did not allege any particular prejudice. Accordingly, we conclude that the trial court did not err in denying the motion to dismiss.

## CONCLUSION

Based on the foregoing analysis, we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE